549 So.2d 1370 (1989)
Wayne TOMPKINS, Petitioner,
v.
Richard L. DUGGER, Etc., Respondent.
Wayne TOMPKINS, Appellant,
v.
STATE of Florida, Appellee.
Nos. 74098, 74235.
Supreme Court of Florida.
September 14, 1989.
Rehearing Denied November 6, 1989.
*1371 Larry Helm Spalding, Capital Collateral Representative, Martin J. McClain, Asst. CCR, and Linda Feldman, Staff Atty., Office of the Capital Collateral Representative, Tallahassee, for petitioner/appellant.
Robert A. Butterworth, Atty. Gen., and Robert J. Krauss, Asst. Atty. Gen., Tampa, for respondent/appellee.
BARKETT, Justice.
Wayne Tompkins, a prisoner under sentence of death and active death warrant, petitions for a writ of habeas corpus, appeals the trial court's denial of his motion for postconviction relief filed under Florida Rule of Criminal Procedure 3.850, and requests a stay of execution. Our jurisdiction is mandatory.[1] On June 2, 1989, this Court granted Tompkins' motion for stay pending further order. We now vacate the stay and deny relief.
Tompkins was convicted of the strangulation murder of fifteen-year-old Lisa Lea DeCarr, whose skeletal remains were discovered in a grave located beneath her Tampa home in June 1984. Following the jury's recommendation, the trial judge imposed the death sentence. The Court affirmed the conviction and sentence in Tompkins v. State, 502 So.2d 415 (Fla. 1986), cert. denied, 483 U.S. 1033, 107 S.Ct. 3277, 97 L.Ed.2d 781 (1987).
In his habeas petition, Tompkins raises nine grounds for relief. We deny Claims 1, 2, 4, 6, 8, and 9 because trial counsel failed to object at trial.[2] Thus, we must reject Tompkins' claim of ineffective assistance of appellate counsel. Appellate counsel could not have been ineffective for failing to raise claims on direct appeal which were not properly preserved. Suarez v. Dugger, 527 So.2d 190, 193 (Fla. 1988). We also reject Claim 3 that Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), compels a reversal of the trial court's finding that the murder was "especially, heinous, atrocious, or cruel."[3]
Likewise, Tompkins is not entitled to relief upon the asserted basis in Claim 7 that appellate counsel failed to object to inflammatory photographs of the victim's skeletal remains. The record shows that trial counsel objected to the introduction of this evidence. The decision of the trial judge to admit this evidence was within the parameters of his discretion. Therefore, Tompkins cannot demonstrate that he was *1372 prejudiced by appellate counsel's failure to raise this claim on direct appeal.
In Claim 5, Tompkins argues that he was denied his sixth amendment right to counsel in that he was precluded from presenting a defense. This preclusion occurred when the trial court sustained objections to hearsay testimony offered to show that the victim was alive subsequent to the time Tompkins was alleged to have killed her. We find no error in the trial court's evidentiary ruling on this question and therefore deny relief.
In his rule 3.850 motion, Tompkins raises nineteen claims. After an evidentiary hearing on May 19 and 20, 1989, the trial court denied relief. We affirm.
First, Tompkins argues that Florida Rule of Criminal Procedure 3.851 effectively operates to deny equal protection and access to the courts by empowering the Governor to shorten the two-year filing deadline granted by rule 3.850. This Court has previously rejected this argument in Cave v. State, 529 So.2d 293, 298-99 (Fla. 1988).
We reject as meritless Claims 3, 10, and 19 in which Tompkins contends that his court-appointed trial counsel, Cass Castillo, withdrew to accept a position with the prosecutor's office, thus rendering proceedings fundamentally unfair; that the state knowingly used false and misleading testimony; and that improper influences on the jury affected its ability to render an impartial verdict.
The remaining claims assert that the state withheld material exculpatory evidence in violation of Brady v. Maryland[4] and that trial counsel provided ineffective assistance. As to the Brady violation, Tompkins claims that the state should have provided defense counsel with jail records showing that Tompkins was given Sinequan while in jail; school records indicating that Lisa had been seen by schoolmates after she allegedly was killed; and information suggesting that Tompkins' cell mate, who had testified that Tompkins confessed, was a state agent.
The record clearly reflects that counsel knew that Lisa reportedly was seen after the time established for her murder. Counsel attempted to introduce this very evidence through the hearsay testimony of Lisa's mother. We also agree that counsel's lack of knowledge that Tompkins asked for medication while in custody had no prejudicial effect on the outcome of the trial. Finally, we find no evidence in the record to support any theory that Tompkins' cell mate was a state agent. Accordingly, we affirm the trial court on the Brady issue.
Tompkins' ineffective assistance of counsel argument encompasses five claims. First, he argues that counsel should have introduced testimony of the witness who claimed to have seen Lisa after the murder. The evidence, however, reflects that counsel's investigator interviewed this witness. At the time of the interview, the witness had absolutely no recollection of ever having reported seeing Lisa. Moreover, this witness was "drying out" from drugs and had great difficulty with her memory. It is clear that a strategic decision was made not to call this witness and to try instead to present this testimony, to the extent permitted by the trial judge, through the hearsay testimony of Lisa's mother.
In addition, Tompkins contends that trial counsel was ineffective for failing adequately to argue that the prosecution violated his sixth amendment rights when the authorities secured his confession through cell mate Turco. As noted above, the record is devoid of any evidence of the existence of an agency relationship between Turco and the state. Tompkins also argues that trial counsel failed to adequately impeach the in-court identification made by Kathy Stevens and to object to a violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).[5] The trial court found, and we agree, that *1373 trial counsel was not ineffective as to any of these claims.
In the second part of the ineffectiveness claim, Tompkins asserts that counsel failed to investigate and present evidence of mitigation in the penalty phase. The trial court found, and we again agree, that counsel was deficient in this regard. However, the trial court also found that the mitigating evidence overlooked by counsel would not have changed the outcome, and therefore did not demonstrate prejudice. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).
The trial judge, when imposing the death penalty, found three aggravating circumstances: previous conviction of a violent felony;[6] murder committed during an attempt to commit a sexual battery;[7] and that the murder was especially heinous, atrocious, or cruel.[8] The previous felony convictions consisted of two prior rapes at knife point. Tompkins alleges that there were extenuating circumstances which would mitigate this aggravating factor. He further submits that additional mitigating evidence existed and should have been presented at trial. This mitigation included an abused childhood and an addiction to drugs and alcohol. The trial court found that this evidence would not have affected the penalty in light of the crime and the nature of the aggravating circumstances. We affirm the trial court's finding that the second prong of the Strickland test has not been satisfied. Id.
Finally, in his rule 3.850 motion, Tompkins has reasserted numerous claims advanced in his petition for habeas corpus.[9] We likewise affirm the trial judge's denial of these claims.
Accordingly, we deny the petition for writ of habeas corpus, affirm the trial court's denial of Tompkins' motion for postconviction relief, and vacate the stay of execution.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, GRIMES and KOGAN, JJ., concur.
NOTES
[1] Art. V, § 3(b)(1) & (9), Fla. Const.
[2] In these claims, Tompkins argues that: the penalty phase jury instructions impermissibly shifted to the defendant the burden of proving by the introduction of mitigating evidence that death was inappropriate; the trial court and prosecutor improperly asserted that sympathy towards the defendant was an improper consideration in the jury's sentencing recommendation; the prosecutor made an improper "golden rule" argument to the penalty phase jury; argument and testimony was admitted in violation of Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987); the death sentence impermissibly rested upon an automatic aggravating factor because the sentencer was entitled to automatically return a death sentence as a result of his conviction for felony murder; and the jury was misled as to its proper role for reasons expressed in Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).
[3] § 921.141(5)(h), Fla. Stat. (1987).
[4] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[5] This Court has previously ruled that Caldwell is not applicable in Florida. Combs v. State, 525 So.2d 853 (Fla. 1988).
[6] § 921.141(5)(b), Fla. Stat. (1985).
[7] § 921.141(5)(d), Fla. Stat. (1985).
[8] § 921.141(5)(h), Fla. Stat. (1985).
[9] These include Claims 2, 12, 14, and 16.