651 So.2d 84 (1994)
Johnny WILLIAMSON, Petitioner,
v.
Richard L. DUGGER, Respondent.
Johnny WILLIAMSON, Appellant,
v.
STATE of Florida, Appellee.
Nos. 74973, 76860.
Supreme Court of Florida.
November 10, 1994.
Rehearing Denied March 14, 1995.
*85 Michael J. Minerva, Capital Collateral Representative, Martin J. McClain, Chief Asst. CCR, Thomas H. Dunn, Asst. CCR and John S. Sommer, Staff Atty., Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Richard B. Martell, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Johnny Williamson, a prisoner under sentence of death, seeks habeas corpus relief and appeals the circuit court's denial of his motion filed pursuant to Florida Rule of Criminal Procedure 3.850. We have jurisdiction pursuant to article V, section 3(b)(1) and (9) of the Florida Constitution. For the reasons stated below, we deny the habeas corpus petition and affirm the circuit court's judgment.
Williamson was convicted of first-degree murder and the unlawful possession of a knife while an inmate. The jury recommended the death sentence, and the judge followed the jury's recommendation. This Court affirmed the convictions and the sentence. Williamson v. State, 511 So.2d 289 (Fla. 1987), cert. denied, 485 U.S. 929, 108 S.Ct. 1098, 99 L.Ed.2d 261 (1988).
Our direct review of the record established that while inmates at Cross City Correctional Institution, Williamson and
his "partner" Omer Williamson (no relation) were selling marijuana for Daniel Drew, also an inmate at that facility. According to Omer Williamson's testimony, Omer owed Drew $15 in connection with a marijuana sale. Omer decided not to pay Drew because Omer believed Drew had been lying to him. When Omer told the appellant that he did not intend to repay Drew, Williamson said that they would have to kill Drew because Drew was "a country boy" who would stab Omer if he didn't pay his debt. "Chickenhead" Robertson, another inmate at the facility and co-defendant in Williamson's trial, learned of the plan to kill Drew and offered to look for a knife. When Robertson and Williamson were unable to find a knife, Omer went to his cell and got a metal rod from the sink which Drew had previously sharpened to a point. While Robertson acted as a lookout, Williamson and Omer went to the *86 maintenance shop building where Drew was working. Williamson asked an inmate working at the shop to send Drew outside. When Drew came out Omer stood behind him, while Williamson gave him $5 so that it would look like they had given Drew less than Omer owed him and he had gotten upset and pulled a knife on them. Williamson then told Drew that Omer was having trouble getting the rest of the money and needed a knife to collect. Drew had apparently made a knife for Williamson and gave it to him at that point in the conversation. On Williamson's signal, Omer grabbed Drew by the throat from behind. Williamson stabbed Drew and a struggle ensued, with Omer throwing Drew to the ground, kicking him in the head several times. Williamson continued to stab Drew with the knife. When Omer became "grossed out" he gave Williamson the rod and left. Williamson then straddled Drew stabbing him repeatedly with the knife and metal rod. After leaving Drew, Williamson then returned the rod to Omer and gave the knife to Robertson. Omer returned the rod to the sink in his cell and Robertson put the knife in a cast he was wearing, eventually burying it underneath a tree where it was later found.
Williamson, 511 So.2d at 290.
In 1989, the governor signed a death warrant. Williamson then filed a petition for habeas relief in this Court and a rule 3.850 motion in circuit court.

Habeas Corpus
In his habeas corpus petition, Williamson claims: (1) The jury was incorrectly instructed that he had no right to defend himself from an unlawful attack by the victim; (2) Security measures undertaken during the trial by court officers in the presence of the jury abrogated the presumption of innocence, diluted the state's burden to prove guilt beyond a reasonable doubt, and injected misleading and unconstitutional factors into the proceedings; (3) The trial court improperly asserted that sympathy and mercy were improper considerations; and (4) The penalty phase jury instructions improperly shifted the burden to Williamson to prove that death was inappropriate, and the judge employed this improper standard in sentencing Williamson to death. Williamson also claims that appellate counsel was ineffective for failing to raise each of these claims on direct appeal.
"[H]abeas corpus is not a vehicle for obtaining additional appeals of issues which were raised, or should have been raised, on direct appeal or which were waived at trial or which could have, should have, or have been raised in rule 3.850 proceedings." White v. Dugger, 511 So.2d 554, 555 (Fla. 1987). We find that most of the claims raised in this habeas corpus petition are procedurally barred. We discuss only the claims that appellate counsel was ineffective in violation of Williamson's sixth and fourteenth amendment rights.
The standard for reviewing claims of ineffective assistance of appellate counsel in Florida's habeas corpus proceedings parallels the requirements of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):
Petitioner must show 1) specific errors or omissions which show that appellate counsel's performance deviated from the norm or fell outside the range of professionally acceptable performance and 2) the deficiency of that performance compromised the appellate process to such a degree as to undermine confidence in the fairness and correctness of the appellate result. Johnson v. Wainwright, 463 So.2d 207 (Fla. 1985).
Wilson v. Wainwright, 474 So.2d 1162, 1163 (Fla. 1985). "Where a particular legal argument, had it been argued [on appeal], would in all probability have been found without merit, the omission to raise it will not be deemed a deficiency" such as to constitute ineffective assistance of appellate counsel. Thomas v. Wainwright, 495 So.2d 172, 174 (Fla. 1986), cert. denied, 480 U.S. 911, 107 S.Ct. 1360, 94 L.Ed.2d 530 (1987); see also Francois v. State, 423 So.2d 357, 361 (Fla. 1982). Moreover, "[a]s noted in Downs v. Wainwright, 476 So.2d 654, 657 (Fla. 1985), `[w]e have repeatedly held that appellate counsel cannot be considered ineffective for failing to raise issues which he was procedurally *87 barred from raising because they were not properly raised at trial.' See also Ruffin v. Wainwright, 461 So.2d 109 (Fla. 1984)." Routly v. Wainwright, 502 So.2d 901, 903 (Fla. 1987); See also Tompkins v. Dugger, 549 So.2d 1370, 1371 (Fla. 1989), cert. denied, 493 U.S. 1093, 110 S.Ct. 1170, 107 L.Ed.2d 1073 (1990).
Williamson first claims that appellate counsel was ineffective for failing to argue that Williamson was entitled to a self-defense jury instruction. Our review of the record comports with the State's position that Williamson presented no evidence in the guilt phase to support the giving of a self-defense jury instruction. The only evidence suggesting self defense came in the penalty phase when Williamson testified for the first and only time at his trial. Thus, Williamson was not entitled to the self-defense instruction at the end of the guilt phase, and his appellate counsel cannot be deemed ineffective for failing to argue on these facts that the jury should have been so instructed.
We reject Williamson's other claims of ineffectiveness of appellate counsel because trial counsel did not adequately preserve the issues. With respect to security measures, Williamson moved prior to trial to limit the appearance of security, and the judge ordered certain restraints on the appearance of security. Williamson did not object to that ruling or to any subsequent security measures actually undertaken. As to the other claims, Williamson failed to lodge contemporaneous objections to the instructions he now questions.
Accordingly, we deny the writ.

Rule 3.850
Shortly after Williamson filed his rule 3.850 motion, the trial judge issued an indefinite stay of execution. The judge conducted an evidentiary hearing, but refused to let Williamson present evidence concerning a newly discovered evidence claim. The judge informed both counsel by letter that he intended to deny Williamson's rule 3.850 motion, and invited both parties to submit proposed orders. The State submitted a proposed order, but collateral counsel filed an objection to the usage of any order proposed by the parties and demanded that the judge prepare his own order. Using the State's prepared order, the judge entered an order denying all relief. Upon Williamson's motion for rehearing, the judge vacated the first order and issued a second order, which also denied relief.
On appeal, Williamson raises six claims relating to his rule 3.850 motion: (1) Trial counsel was ineffective for failing to present available evidence to support a theory of justifiable use of deadly force or "reduced intent," and by failure to adequately challenge the State's case, thereby depriving Williamson of a defense; (2) Williamson was denied a fair adversarial testing of the prosecution's case through the ineffective assistance of counsel at the guilt phase, through the State's nondisclosure of material exculpatory evidence, and through the State's use of false or misleading evidence and argument; (3) Williamson was denied effective assistance of counsel at the sentencing phase; (4) Trial court's summary denial of Williamson's newly discovered evidence claim, without an evidentiary hearing, was erroneous as a matter of law and fact; (5) Security measures undertaken in the presence of the jury abrogated the presumption of innocence, diluted the State's burden to prove guilt beyond a reasonable doubt, and injected misleading and unconstitutional factors into the trial and sentencing proceedings, and counsel's failure to object amounted to ineffective assistance; and (6) The cold, calculated, and premeditated aggravating circumstance was applied to Williamson's case in violation of the eighth and fourteenth amendments of the United States Constitution.
Claim 5, except for that part dealing with trial counsel's effectiveness, is procedurally barred because it either could or should have been raised on direct appeal. Smith v. State, 445 So.2d 323 (Fla. 1983), cert. denied, 467 U.S. 1220, 104 S.Ct. 2671, 81 L.Ed.2d 375 (1984). We also find that claim 6 is procedurally barred as it was raised and rejected on direct appeal. Williamson, 511 So.2d at 293.
Claims 1, 3, and part of claims 2 and 5 involve allegations of ineffective assistance *88 of trial counsel. In order to prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that 1) counsel's performance was deficient and 2) there is a reasonable probability that the outcome of the proceeding would have been different. Strickland, 466 U.S. at 687, 694, 104 S.Ct. at 2064, 2068. Moreover, a court considering a claim of ineffective counsel need not determine whether counsel's performance was deficient when it is clear that the alleged deficiency was not prejudicial. Kennedy v. State, 547 So.2d 912, 913 (Fla. 1989).
According to Strickland, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690, 104 S.Ct. at 2066. As discussed at length in the 3.850 order below, the record refutes Williamson's claim that counsel's performance was deficient as to any of these issues. We also agree with the trial court's determination that Williamson "failed to demonstrate any prejudice." Thus, because Williamson failed to demonstrate either prong of Strickland, relief was properly denied as to his claims of ineffective assistance of counsel.
In addition to the claim that counsel was ineffective during the guilt phase proceedings, Williamson also contends in claim 2 that he was denied a fair adversarial testing of the prosecution's case because the State failed to disclose material exculpatory evidence and used false or misleading evidence and argument. The State correctly points out that these claims are mutually inconsistent with the claim that counsel was ineffective. "Counsel cannot be considered deficient in performance for failing to present evidence which allegedly has been improperly withheld by the state." Roberts v. State, 568 So.2d 1255, 1259 (Fla. 1990).
However, notwithstanding the inconsistent nature of the claims, we agree with the trial court's assessment that there is "absolutely no evidence to support these claims" of prosecutorial misconduct. The record reveals that most of the "withheld" evidence consisted of the prosecutor's trial preparation notes. The notes did not reflect the verbatim statements of any witness interviewed and had not been signed, adopted, or approved by the persons to whom they were attributed. The notes also included trial strategy notations by the prosecutor and his personal interpretation of remarks made by the witnesses. Such material is not subject to disclosure. See Breedlove v. State, 413 So.2d 1, 5 (Fla. 1982) (finding that police reports were not discoverable as "statements" under Florida Rule of Criminal Procedure 3.220 because not signed, adopted, or approved by persons to whom attributed, not verbatim, and not recorded contemporaneously with their making); see also Fla.R.Crim.P. 3.220(g)(1) (disclosure not required of legal research or of records, correspondence, reports, or memoranda to the extent that they contain the opinions, theories, or conclusions of the attorneys or their legal staffs).
Williamson also claims the State failed to disclose a secret deal made with witness Steven Bishop. We find no evidence of any deal between the State and Bishop in this case. During cross-examination at the evidentiary hearing, the prosecutor testified that no such deal existed and that, at most, he had simply written a letter to the parole commission confirming the fact that Bishop had given information to the prison authorities after the murder. The prosecutor stated unequivocally, "there simply was no deal. There was no agreement of anything else in the future that would come as a result of his testimony." The prosecutor's testimony was unrebutted, and neither Bishop nor his counsel were called to testify at the evidentiary hearing.
In claim 4, Williamson argues that the trial court erred in summarily denying his claim of newly discovered evidence. Williamson bases this claim on affidavits obtained from two inmates who were incarcerated with key State witness Omer Williamson in an Alabama prison. The affidavits claim that Omer told the inmates that he had "lied to the Florida authorities so that he could avoid the electric chair." The trial court denied this claim without an evidentiary hearing. Williamson argues that the affidavits must be taken "at face value" and thus *89 are "sufficient to require an evidentiary hearing." We do not agree.
In order to prevail on a claim of newly discovered evidence, the evidence "must be of such nature that it would probably produce an acquittal on retrial." Jones v. State, 591 So.2d 911, 915 (Fla. 1991). The affidavits at issue in this case constitute, at best, impeachment evidence. Aside from the assertion that Omer lied in his testimony at trial, the affidavits do not set forth in what particular way Omer lied. In fact, the statements contained in the affidavits in large part support the testimony that Omer gave at trial and are consistent with the State's case against Williamson. Moreover, Omer was substantially impeached at trial, including impeachment by a witness who heard Omer state that he intended to "fix [Williamson's] ass." Thus, the impeachment evidence contained in these affidavits is cumulative in nature as well.
We find no error in the trial court's determination that Williamson's newly discovered claim constituted "an insufficient basis for relief." These affidavits do not meet the Jones standard, as such cumulative impeachment evidence would not probably produce an acquittal on retrial. See also United States v. Reed, 887 F.2d 1398, 1404 (11th Cir.1989), cert. denied, 493 U.S. 1080, 110 S.Ct. 1136, 107 L.Ed.2d 1041 (1990) (newly discovered evidence must not be merely cumulative or impeaching).

Conclusion
Accordingly, we affirm the trial court's order denying Williamson's rule 3.850 motion and deny the petition for writ of habeas corpus.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.