655 So.2d 74 (1995)
STATE of Florida, Appellant,
v.
McArthur BREEDLOVE, Appellee.
No. 82731.
Supreme Court of Florida.
April 6, 1995.
Rehearing Denied June 1, 1995.
*75 Robert A. Butterworth, Atty. Gen. and Richard B. Martell, Chief, Capital Appeals, Tallahassee, for appellant.
Michael J. Minerva, Capital Collateral Representative, Gail E. Anderson, Todd G. Scher and Terri L. Backhus, Asst. Capital Collateral Representatives, Office of the Capital Collateral Representative, Tallahassee, for appellee.
PER CURIAM.
The State appeals an order vacating Breedlove's death sentence and granting Breedlove a new sentencing hearing. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution.
Breedlove was convicted in 1979 of first-degree felony murder for killing a man during a residential burglary. The jury recommended that Breedlove be sentenced to death, and the trial judge imposed the death penalty. The judge found the following aggravating factors: (1) Breedlove had prior convictions for crimes of violence; (2) Breedlove committed the homicide during the course of a burglary; and (3) the homicide was especially heinous, atrocious, and cruel. The judge found that no mitigating circumstances applied.
Among his arguments raised on direct appeal, Breedlove contended that the trial court erred when it denied Breedlove's requested jury instruction regarding the heinous, atrocious, or cruel aggravator. Though not mentioned in our opinion, we necessarily rejected this contention when we affirmed the conviction and sentence in Breedlove v. State, 413 So.2d 1, 9 (Fla.), cert. denied, 459 U.S. 882, 103 S.Ct. 184, 74 L.Ed.2d 149 (1982).
In 1992, Breedlove appealed the denial of his second motion for postconviction relief and filed a petition for habeas corpus which raised, in part, the unconstitutionality of the instruction on the heinous, atrocious, or cruel aggravator, the wrongful application of this aggravator to his case, and ineffectiveness of counsel during the penalty phase. We found that Breedlove's arguments regarding the unconstitutionality of the instruction on the *76 heinous, atrocious, or cruel aggravator and the application of this aggravator to his case had already been fully considered on direct appeal and were therefore procedurally barred. Breedlove v. Singletary, 595 So.2d 8, 10 (Fla. 1992). However, we remanded for an evidentiary hearing on the issue of the ineffectiveness of counsel at sentencing.
On remand, the trial court denied all relief. Breedlove appealed, but while that appeal was pending, we relinquished jurisdiction so that the trial court could hear Breedlove's instant motion for postconviction relief predicated upon the recently decided opinion in Espinosa v. Florida, ___ U.S. ___, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992). Breedlove argued that at his original trial the judge had erred when he refused to grant Breedlove's request for an expanded instruction for the heinous, atrocious, or cruel aggravator. The trial court ruled in Breedlove's favor and held that Breedlove had properly preserved his Espinosa claim regarding the vagueness of the jury instruction and that Breedlove should be granted a new sentencing hearing because the court could not determine beyond a reasonable doubt whether the jury would still have recommended the death penalty if the expanded instruction had been given.
At the outset, it is clear that the jury instruction on heinous, atrocious, or cruel given at Breedlove's trial was of a type that was declared unconstitutional ten years later in Espinosa.[1] Further, we cannot accept the State's contention that Breedlove failed to preserve the issue at trial. He submitted a proposed instruction which contained the language deemed so critical to the validity of the aggravator in Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).[2] The judge denied the requested instruction as being "covered in the charge." In the appeal from his conviction, Breedlove argued that the judge had erred in denying his requested instruction. Thus, the point was sufficiently preserved. See James v. State, 615 So.2d 668 (Fla. 1993); Atwater v. State, 626 So.2d 1325 (Fla. 1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1578, 128 L.Ed.2d 221 (1994).
However, we believe that the failure to give the requested instruction on heinous, atrocious, or cruel was harmless error.[3] The evidence presented at the trial clearly established that Breedlove committed the murder in a heinous, atrocious, or cruel manner. The fatal stabbing was administered with such force that it broke the victim's collar bone and drove the knife all the way through to the shoulder blade. The puncture of the victim's lung was associated with great pain and the victim literally drowned in his own blood. The victim had defensive stab wounds on his hands and did not die immediately. Moreover, the attack occurred while the victim lay asleep in his bed as contrasted to a murder committed in a public place. In fact, in discussing this aggravator in Breedlove's direct appeal, we stated that this killing was "far different from the norm of capital felonies" and set apart from other murders. Breedlove, 413 So.2d at 9. Under the facts presented, this aggravator clearly existed and would have been found even if *77 the requested instruction had been given. See Chandler v. Dugger, 634 So.2d 1066, 1069 (Fla. 1994); Jackson v. Dugger, 633 So.2d 1051, 1055 (Fla. 1993); Gorby v. State, 630 So.2d 544, 548 n. 6 (Fla. 1993), cert. denied, ___ U.S. ___, 115 S.Ct. 99, ___ L.Ed.2d ___ (1994); cf. Thompson v. State, 619 So.2d 261 (Fla.), cert. denied, ___ U.S. ___, 114 S.Ct. 445, 126 L.Ed.2d 378 (1993). Further, there were two other valid aggravating circumstances, including the previous conviction of a violent felony. While Breedlove presented some testimony concerning possible psychological problems, two state experts expressly stated that they found no evidence of organic brain damage or psychosis and one of them said Breedlove was malingering. Any error in the instruction was harmless beyond a reasonable doubt and did not affect Breedlove's sentence.[4]State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
We reverse the order vacating Breedlove's death sentence.
It is so ordered.
GRIMES, C.J., and OVERTON, HARDING and WELLS, JJ., concur.
ANSTEAD, J., dissents with an opinion, in which SHAW and KOGAN, JJ., concur.
ANSTEAD, Justice, dissenting.
I would affirm the trial court's order because it correctly applied this Court's recent holding in James v. State, 615 So.2d 668 (Fla. 1993), as well as the strict harmless error test we adopted in State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). The majority approves of the trial court's reliance on James but disagrees with the court's harmless error analysis. The trial court held, and I agree, that it cannot be concluded beyond a reasonable doubt that the jury would have reached the same result had it received a proper, constitutional instruction.
Our holding today is directly at odds with our own recent appraisal of the facts in this case. In Breedlove v. Singletary, 595 So.2d 8 (Fla. 1992), we were confronted with an identical harmless error issue involving counsel's failure to develop evidence of mitigating circumstances during Breedlove's penalty hearing. We held that Breedlove was entitled to an evidentiary hearing and, in doing so, characterized the facts as follows:
The State primarily argues that Breedlove has failed to demonstrate that any prejudice resulted even if his counsel was ineffective. However, it must be remembered that Breedlove's victim died from a single stab wound inflicted during the course of a burglary and that Breedlove acquired the weapon only after entering the house. The State conceded at the trial that this was a case of felony murder rather than premeditated murder. A strong presentation of mitigating evidence is more likely to tip the scales in a case where the killing was not premeditated. In the final analysis, we do not believe that the issue of ineffectiveness during the penalty phase can be resolved without an evidentiary hearing.
595 So.2d at 12 (emphasis added).[5]
Further, our initial appraisal of the facts supporting the trial court's finding of the heinous, atrocious, or cruel aggravator is fully consistent with this analysis. In our criginal opinion, partially quoted in the majority opinion, we stated:
Although death resulted from a single stab wound, there was testimony that the victim suffered considerable pain and did not die immediately. While pain and suffering alone might not make this murder heinous, atrocious, and cruel, the attack occurred while the victim lay asleep in his bed. This is far different from the norm of capital felonies and sets this crime apart *78 from murder committed in, for example, a street, a store, or other public place.
Breedlove v. State, 413 So.2d at 9. Neither of our prior evaluations of the facts in this case supports a finding of harmless error.
We should also note the nature of the error here is of a constitutional dimension. The United States Supreme Court has held that the actual instruction given to the sentencing jury in this case violated the due process provisions of the federal constitution. While we may apply a harmless error analysis, we must do so in accord with our holding in DiGuilio where we stated:
The test is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test. Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence. The focus is on the effect of the error on the trier-of-fact. The question is whether there is a reasonable possibility that the error affected the verdict. The burden to show the error was harmless must remain on the state. If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful.
DiGuilio, 491 So.2d at 1139. This represents a very strict standard for evaluating the harmfulness of error.
In James, for example, on plenary review, this Court had determined that a jury and judge's erroneous consideration of the heinous, atrocious, or cruel factor was harmless error in light of the existence of four other valid aggravators and no mitigators. See James v. State, 453 So.2d 786 (Fla.), cert. denied, 469 U.S. 1098, 105 S.Ct. 608, 83 L.Ed.2d 717 (1984). Nevertheless, on review of the same Espinosa claim involved herein, we granted relief to James in spite of our previous and specific harmless error holding, and explained:
On appeal, on the other hand, we held that the facts did not support finding that aggravator. James, 453 So.2d at 792. Striking that aggravator left four valid ones to be weighed against no mitigators, and we believe that the trial court's consideration of the invalid aggravator was harmless error. We cannot say beyond a reasonable doubt, however, that the invalid instruction did not affect the jury's consideration or that its recommendation would have been the same if the requested expanded instruction had been given. Therefore, we reverse the trial court's order as to the last issue regarding the constitutionality of the instruction on the heinous, atrocious, or cruel aggravator. The trial court is directed to empanel a new jury, to hold a new sentencing proceeding, and to resentence James.
615 So.2d at 669.
There is no valid basis for treating Breedlove different than James. In James there were two victims, a husband and wife, and James was convicted of the murder of the wife and the attempted murder of the husband. Breedlove was also charged with the murder and attempted murder of a husband and wife, but was acquitted by the jury of the attempted murder, a factor that supports Breedlove's claim of prejudice here. The only detailed factual circumstances of the murder in James is contained in Justice Boyd's specially concurring opinion, in which he stated:
The murder of the elderly victim was preceded by the infliction of severe mental anguish as she heard the intruders shoot her husband and then come looking for her. Moreover, the evidence showed that the wheelchair-bound woman, powerless to escape or resist, did not die instantly but moaned in pain as her life was gradually extinguished. These circumstances clearly set the crime apart from the simple norm of an intentional murder.
453 So.2d at 794. While it may seem unreal to be comparing the circumstances of one egregious murder to another, we have an obligation to apply the law consistently. Consistency with our holding in James and with our previous evaluations of the facts of this case precludes a harmless error finding here.
SHAW and KOGAN, JJ., concur.
NOTES
[1] Breedlove's jury instruction read as follows:

H, that the crime for which the defendant is to be sentenced was especially heinous, atrocious, or cruel.
Now, "heinous" means extremely wicked or shockingly evil.
"Atrocious" means outrageously wicked and vile.
"Cruel" means designed to inflict a high degree of pain, utter indifference to, or enjoyment of, the suffering of others, pitiless.
This type of instruction was declared improper in Shell v. Mississippi, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990), but it was not until Espinosa that the holding in Shell was deemed applicable to Florida's practice of judicial sentencing following a jury recommendation.
[2] The proposed instruction provided:

The aggravating circumstances that the capital felony was especially heinous, atrocious, or cruel, applies only where the actual commission of the capital felony was accomplished by such additional acts as to set the crime apart from the norm of capital felonies  the consciousless or pitiless crime which is unnecessarily tortuous to the victim.
[3] In reaching this conclusion, we are not invading the prerogative of the fact finder. The trial judge who entered the order granting the new sentencing proceeding took no testimony and was not the judge who presided at the original trial.
[4] Breedlove's reliance on James v. State, 615 So.2d 668 (Fla. 1993), is misplaced because in that case it was determined that the facts did not support a finding of heinous, atrocious, or cruel.
[5] Factually, our holding today also appears inconsistent with Proffitt v. State, 510 So.2d 896 (Fla. 1987), where we reduced, on proportionality grounds, a death sentence to life imprisonment. Proffitt also involved a felony-murder burglary where the victim was stabbed to death in his bed. The legal issue there, proportionality, was different. However, our holding that death was not appropriate in a case involving similar facts demonstrates that reasonable people could differ as to the facts, thereby undermining our holding of harmless error here.