692 So.2d 874 (1997)
McArthur BREEDLOVE, Appellant,
v.
STATE of Florida, Appellee.
No. 80161.
Supreme Court of Florida.
March 13, 1997.
Rehearing Denied April 28, 1997.
Michael J. Minerva, Capital Collateral Representative; Gail E. Anderson, Assistant CCR and Todd G. Scher, Assistant CCR, Office of the Capital Collateral Representative, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General and Randall Sutton, Assistant Attorney General, Miami, for Appellee.
PER CURIAM.
We have on appeal the judgment of the trial court denying McArthur Breedlove, an inmate under sentence of death, relief requested pursuant to rule 3.850, Florida Rules of Criminal Procedure. We have jurisdiction. Art. V, § 3(b)(1), (9), Fla. Const. For the reasons expressed, we affirm the trial court's order denying Breedlove's postconviction motion.
This case has a long history of appellate and postconviction proceedings beginning in 1979 when a jury convicted Breedlove of first-degree murder for stabbing a man to death during a residential burglary. The trial court sentenced him to death, and this Court affirmed. Breedlove v. State, 413 So.2d 1 (Fla.), cert. denied, 459 U.S. 882, 103 S.Ct. 184, 74 L.Ed.2d 149 (1982). Breedlove filed a 3.850 motion with the trial court. After a death warrant was signed, the trial court stayed Breedlove's execution pending resolution of the 3.850 motion. The trial court summarily denied the 3.850 motion, and this Court affirmed. Breedlove v. State, 580 So.2d 605 (Fla.1991). After Breedlove's second death warrant was signed, he filed a second 3.850 motion, which the trial court summarily denied. Breedlove appealed the denial and filed a petition for writ of habeas corpus. This Court denied the petition and found untimely the claims Breedlove raised in his 3.850 motion. Breedlove v. Singletary, 595 So.2d 8 (Fla.1992).
*875 However, in our decision in 1992, we specifically noted and held:
Breedlove was represented by the public defender's office both at his trial and during his first rule 3.850 proceeding. Therefore, that office was unable to assert a claim of ineffective assistance of trial counsel. Adams v. State, 380 So.2d 421 (Fla. 1980). On the peculiar facts of this case, we choose to overlook the procedural default as it relates to claims of ineffective assistance of counsel.
Breedlove, 595 So.2d at 11.[1]
Therefore, in light of the public defender's conflicting roles, we reversed the trial court's summary denial with regard to Breedlove's allegations of ineffective assistance of counsel at the penalty phase, stayed Breedlove's pending execution, and remanded for an evidentiary hearing. Breedlove, 595 So.2d at 12. We noted in our opinion that the State primarily argued that Breedlove had failed to demonstrate that prejudice resulted even if his counsel was ineffective. We did not believe that this issue of prejudice could be resolved without a hearing. The trial court held the evidentiary hearing in 1992 and issued an order denying relief; thereafter, Breedlove filed this appeal.
During this appeal of his second 3.850 motion, Breedlove filed in the trial court a rule 3.850 motion on the basis of Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992). Breedlove argued that at his original trial, the judge erred when he refused to grant Breedlove's request for an expanded jury instruction for the "heinous, atrocious, or cruel" (HAC) aggravating factor. Breedlove then filed with this Court a motion to hold in abeyance the appeal of his second 3.850 motion. We granted that motion and stayed all proceedings pending disposition of Breedlove's third 3.850 motion. The trial court, after an evidentiary hearing, granted Breedlove's third 3.850 motion on the basis that an expanded HAC instruction should have been given and the court could not determine beyond a reasonable doubt whether the jury would have recommended the death penalty had an expanded instruction been given. The court ordered a new sentencing hearing, and the State appealed this granting of Breedlove's third 3.850 motion. We then reviewed the third 3.850 motion based upon the Espinosa claim. We reversed, determining from our review of the record that the failure to give the requested instruction on HAC was harmless error. State v. Breedlove, 655 So.2d 74 (Fla.), cert. denied, ___ U.S. ___, 116 S.Ct. 678, 133 L.Ed.2d 527 (1995).
This brings us to this determination of the appeal of Breedlove's second 3.850 motion containing his claim of ineffective assistance of counsel at the penalty phase. The record of the 1992 evidentiary hearing reflects that assistant public defenders David Finger and Jay Levine were initially assigned to represent Breedlove on his first-degree murder charge. After Breedlove made a statement to the police contrary to the advice of his attorneys, Finger and Levine withdrew from the case; and Eugene Zenobi, their supervisor and the public defender division chief, took over. About two weeks before the trial, Zenobi asked Levine to assist him by reentering the case as "second chair." After the guilt-phase verdict was returned, Zenobi assigned Levine to represent Breedlove during the penalty proceeding. The guilt-phase verdict was returned on a Friday afternoon, and the penalty phase began the following Monday morning.
At the postconviction hearing, the court heard testimony from the three assistant public defenders who represented Breedlove, from family members and friends of Breedlove, from three psychologists who had examined Breedlove for the defense, and from a psychiatrist who had testified for the State. Finger and Levine testified that Levine was hampered in preparing for the penalty phase by the trial court's denial of a time extension between the end of the guilt phase and the beginning of the penalty phase. Levine testified that he had never before handled representation in a first-degree murder trial. Levine further testified that because the responsibility for the penalty phase was "thrust upon [him] on a Friday afternoon," the resulting *876 lack of preparation caused him to "not present effective assistance of counsel." This confession of ineffectiveness because of lack of preparation was somewhat contradicted by the record, which reflects evidence that Levine had handled the representation of Breedlove in motions directed to the penalty phase in advance of the trial. In addition, Zenobi testified that he had been present during the penalty phase and that Levine was an excellent lawyer.[2]
Of the three psychologists who testified for the defense at the postconviction hearing, only two had testified at the original penalty phase. Both of those psychologists testified that even with the additional information provided to them in preparation for the postconviction hearing, the opinions to which each had testified at the penalty phase would have been the same. The third psychologist the defense presented at the postconviction hearing had examined Breedlove shortly before the hearing and also had reviewed background information concerning Breedlove. This psychologist testified that Breedlove had longstanding mental health impairments and that in the psychologist's opinion, they existed at the time of the offense in 1978. This third psychologist further testified that he did not agree with the opinions expressed by psychologists who had testified at the penalty phase on behalf of the State and that he doubted that those opinions could have been formed reliably based on information the State psychologists had at the time they expressed their opinions. At the postconviction hearing, the State presented the testimony of a psychiatrist who had testified at the penalty phase. The psychiatrist testified that his opinion expressed in 1979 that Breedlove was a sociopath and that Breedlove was not under extreme mental duress or influence at the time of the offense would be the same as his opinion expressed at the postconviction hearing. The defense had presented a psychiatrist's testimony at the penalty phase, but he was not a witness at the postconviction hearing.
None of the friends and family members who testified at the postconviction hearing had testified at the penalty phase. These lay witnesses testified that Breedlove's father had beaten Breedlove often during his childhood, that Breedlove's mother was an alcoholic, and that Breedlove was addicted to drugs and exhibited violent behavioral changes when he was on drugs. On cross-examination, the State presented evidence that Breedlove's father had been and still was a hard-working man, that some of Breedlove's siblings were gainfully employed and had been convicted of no crimes, and that Breedlove previously had been convicted of two rapes in California and a murder and a burglary in Broward County, Florida.
The trial court in the postconviction hearing applied both prongs of the ineffectiveness-of-counsel test from Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in addressing Breedlove's claim that his counsel was ineffective during the penalty phase. As to the first prong, deficient performance by the attorney, the court found that Levine was not deficient in any way in representing Breedlove during the penalty phase. The court also addressed the second prong as to prejudice resulting from the attorney's performance. Regarding this second prong, the court found:
It is this Court's opinion that there is no reasonable probability that the outcome would have been different. After hearing testimony of the additional witnesses presented during the evidentiary hearing, this Court is convinced that there is no merit to this argument. This conclusion was arrived at by considering whether or not these additional witnesses and their testimony concerning alleged child abuse of the defendant, considered as a mitigating circumstance could have overcome the aggravating circumstances submitted by the state during the original penalty phase. This Court finds that although mitigating circumstances were not proved by a preponderance of the evidence that were they to be considered as a mitigating circumstance, that the aggravating circumstances outweighed this mitigating circumstance.
*877 On appeal, Breedlove argues that his counsel was ineffective during the penalty phase for: (1) failing to investigate Breedlove's background; (2) failing to furnish mental health experts with information concerning Breedlove's background, the facts of the offense, or his mental status and evidence of his intoxication on the night of the offense, all of which might have served as a basis to support the experts' testimony as to mitigating factors; and (3) failing to call as lay witnesses the family members and friends who could have testified as to potential mitigating circumstances of abandonment by his mother and abuse by his father during childhood as well as his mental instability and his addiction to drugs and alcohol.
The purpose of our remand in 1992 was to allow the trial court to evaluate the issue of ineffectiveness of counsel based on its hearing of the evidence that Breedlove alleged should have been presented at the penalty phase. The primary argument at that time with respect to this issue was whether Breedlove had demonstrated prejudice. To obtain a new penalty-phase proceeding, even assuming that counsel was ineffective as Breedlove alleged, Breedlove had to meet the prejudice prong of Strickland. This prong requires Breedlove to show that there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 669, 104 S.Ct. at 2055-56.
Thus, in this present review, we have focused upon the issue of prejudice. We have reviewed the record of the postconviction hearing and assume without deciding that Breedlove's counsel, Levine, was deficient in his performance during the penalty phase, as Breedlove alleged. For the purpose of this assumption, we have accepted Levine's admission of deficient performance based upon his lack of preparation.[3]
Based upon this review of the evidence, we do not find that the alleged deficient performance resulted in prejudice which meets the prejudice prong of the Strickland analysis. We therefore affirm the trial court's denial of the rule 3.850 motion on that basis.
First, we note that both psychologists who had testified at the penalty phase stated at the postconviction hearing that although additional information from Breedlove's counsel might have been helpful, their opinions were unchanged as to matters about which they had testified, even considering the additional information. We further note our finding in our 1995 opinion that "two state experts expressly stated that they found no evidence of organic brain damage or psychosis and one of them said Breedlove was malingering." Breedlove, 655 So.2d at 77. In light of these opinions, we do not conclude that but for counsel's alleged deficient performance with respect to the preparation of the experts, there is a reasonable probability that the result of the penalty phase would have been different.
Second, we do not agree that the failure to present the testimony of the friends and family members presented by Breedlove at the postconviction hearing meets the prejudice standard. This evidence addressed essentially two subjects: the alleged beatings of Breedlove by his father and his drug addiction. Moreover, we agree with the State's response that the presentation of each of these witnesses would have allowed cross-examination and rebuttal evidence that would have countered any value Breedlove might have gained from the evidence.[4]Valle *878 v. State, 581 So.2d 40, 49 (Fla.1991); Medina v. State, 573 So.2d 293, 298 (Fla.1990) (finding no ineffectiveness in not presenting witnesses where they would have opened the door for the State to explore defendant's violent tendencies).
Even if the trial court had found mitigating circumstances in additional testimony from lay witnesses, the three aggravating factors we have previously affirmed overwhelm whatever mitigation the testimony of Breedlove's friends and family members could provide.[5] We addressed the effects of this type of claimed mitigation in Tompkins v. Dugger, 549 So.2d 1370, 1373 (Fla.1989), a case which is strikingly similar. In Tompkins, the defendant was convicted of the strangulation murder of a fifteen-year-old girl. The defendant claimed ineffective assistance of counsel, asserting that counsel failed to investigate and present evidence of mitigation in the penalty phase. The trial court found that even though counsel was deficient in that regard, the mitigating evidence overlooked by counsel would not have changed the outcome and therefore did not demonstrate prejudice under the Strickland test. This Court affirmed the trial court's finding that the factors of an abused childhood and drug addiction did not counter three aggravating circumstances of being especially heinous, atrocious, or cruel, of commission during a felony, and of prior violent felony convictions. Id. As here, the prior violent felonies were two rapes. See also King v. State, 597 So.2d 780 (Fla.1992); Mendyk v. State, 592 So.2d 1076, 1079-80 (Fla.1992); and Buenoano v. Dugger, 559 So.2d 1116, 1119 (Fla.1990). Similarly, the three aggravating factors the trial court set forth in Breedlove's sentencing overwhelm potential mitigating factors presented by witnesses at the 1992 postconviction hearing.
In sum, we find no reasonable probability that but for deficient performance by counsel, the result of the penalty proceeding would have been different. Since we conclude that Breedlove has failed to demonstrate prejudice, we do not reach the issue of whether counsel's performance was ineffective. We affirm the denial of Breedlove's motion for postconviction relief.
It is so ordered.
OVERTON, SHAW, GRIMES, HARDING and WELLS, JJ., concur.
KOGAN, C.J., and ANSTEAD, J., concur in result only.
NOTES
[1] Respondent asks us to revisit this ruling based upon evidence presented at the 3.850 evidentiary hearing. However, we decline to revisit this ruling.
[2] The testimony concerning Levine's performance was all without the benefit of any records because the public defender's office file has been lost.
[3] We note, as we did in Routly v. State, 590 So.2d 397, 401 n. 4 (Fla.1991), that an attorney's own admission that he or she was ineffective is of little persuasion in these proceedings. We also acknowledge the difficulty in evaluating counsel's performance in light of the fact that the public defender's office file was lost.
[4] For example, the State sought to introduce at the penalty phase rebuttal evidence that Breedlove had confessed to a similar murder in Broward County. Breedlove had admitted to burglarizing the home of a 63-year-old woman and to killing her. At the time of the original trial, Breedlove had not yet been convicted of this crime. Because Breedlove presented no evidence of his character, the court found that the prejudicial nature of this evidence outweighed its probative value.
[5] Breedlove, 655 So.2d 74, 76 (1995).