644 So.2d 54 (1994)
Ian Deco LIGHTBOURNE, Appellant,
v.
STATE of Florida, Appellee.
No. 80366.
Supreme Court of Florida.
June 16, 1994.
Rehearing Denied October 26, 1994.
*55 Michael J. Minerva, Capital Collateral Representative, Gail E. Anderson and John S. Sommer, Asst. CCRs, Office of the Capital Collateral Representative, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Gypsy Bailey, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Ian Deco Lightbourne, a prisoner under sentence of death, appeals a denial of a motion for postconviction relief. We have jurisdiction under article V, section 3(b)(1) of the Florida Constitution.
Lightbourne was convicted of first-degree murder and sentenced to death. On direct appeal, this Court affirmed both the conviction and sentence. Lightbourne v. State, 438 So.2d 380 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984). Lightbourne subsequently filed a motion for postconviction relief under Florida Rule of *56 Criminal Procedure 3.850 which was denied. This ruling was affirmed. Lightbourne v. State, 471 So.2d 27 (1985). Lightbourne then filed a second 3.850 motion which was denied by the circuit court. Lightbourne appealed this denial and also filed a petition for a writ of habeas corpus with this Court. We denied the habeas petition. We affirmed certain aspects of the denial of the 3.850 motion but reversed the order in part and remanded for an evidentiary hearing because of Lightbourne's Brady[1] allegations pertaining to the testimony of two cellmates. Lightbourne v. Dugger, 549 So.2d 1364 (Fla. 1989), cert. denied, 494 U.S. 1039, 110 S.Ct. 1505, 108 L.Ed.2d 640 (1990). After an evidentiary hearing, Lightbourne's motion was again denied. This appeal ensued.
In his Brady claim, Lightbourne alleged that Theodore Chavers and Theophilus Carson, both of whom testified at the trial regarding incriminating statements made by Lightbourne while in the county jail, were acting in concert with the State to obtain the statements and that the State withheld information regarding its agency relationship with Chavers and Carson. Lightbourne also claimed that Chavers and Carson both lied at the trial about what Lightbourne told them and that the State deliberately used this false and misleading testimony.
At the evidentiary hearing, Lightbourne attempted to introduce an affidavit made by Chavers in 1989, almost eight years after the trial, in which he stated that the investigators in the case made it clear to him that several charges against him would be dropped if he acted as an informant. He further stated that the state attorneys pressed him to lie at the trial about what Lightbourne said in the cell. He said that Carson, who was also in the cell, worked for the State as well and that Carson lied about Lightbourne's statements in exchange for having his charges dropped. Lightbourne also tried to introduce several letters purportedly written by Chavers to the state attorney's office and two taped telephone conversations between Chavers and an assistant state attorney in 1989 and 1990, all intended to show that Chavers was working for the State and that he lied at trial.
Further, Lightbourne sought to admit into evidence an affidavit made by Jack R. Hall in 1989 who claimed that he was in the cell with Lightbourne the whole time that Chavers was there and that Hall was the only inmate that Lightbourne would talk to. He stated that he heard Chavers and two other inmates discussing how they were going to get out of jail by telling the police that Lightbourne made incriminating statements about the murder. Lightbourne also wanted to introduce a letter written by Carson in 1982 which intended to prove that Carson expected certain benefits for his testimony. Finally, Lightbourne tried to introduce a letter written by Ray Taylor who was in a cell with Chavers during the evidentiary hearing. Taylor stated in his letter that Chavers told him he lied at Lightbourne's trial and that Lightbourne did not commit the murder.
The trial court refused to admit any of the evidence, ruling that it was hearsay which did not fall under any exception to the hearsay rule. We reject Lightbourne's argument that the evidence should have been admitted.
Chavers, Hall, and Carson were all unavailable witnesses at the time of the evidentiary hearing. Hall had died and Carson could not be located despite a diligent search. At the hearing, Chavers appeared to testify but demonstrated great difficulty answering questions. After a medical and psychological evaluation, he was found incompetent to testify. His testimony was deferred, and when he testified three months later, he professed to have a lack of memory and refused to answer questions. Chavers was found in contempt of court and declared unavailable as a witness.
Section 90.804 of the Florida Evidence Code[2] provides that when a declarant is unavailable as a witness, hearsay evidence can be admitted only if it qualifies under one of the following four exceptions: (1) former testimony; (2) statement under belief of impending death; (3) statement against interest; *57 and (4) statement of family or personal history. Obviously, none of the evidence qualified as former testimony, statements under belief of impending death, or statements of family or personal history. The remaining exception is statement against interest which is defined as:
A statement which, at the time of its making, was so far contrary to the declarant's pecuniary or proprietary interest or tended to subject him to liability or to render invalid a claim by him against another, so that a person in the declarant's position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is inadmissible, unless corroborating circumstances show the trustworthiness of the statement.
§ 90.804(2)(c), Fla. Stat.
Hall's affidavit clearly was not contrary to his pecuniary or proprietary interest, nor did the evidence expose him to criminal liability. Carson's letter likewise was not a statement against his pecuniary, proprietary, or penal interest because his letter does not contradict anything he said at trial. Although Chavers states in his affidavit and in one of the letters that he lied at trial, it cannot be said that a reasonable person would believe they were subject to a perjury penalty eight years after providing testimony at a trial. As the lower court pointed out, the statute of limitations had run so that Chavers could no longer be prosecuted for perjury. See §§ 775.15(2)(b) and 837.02, Fla. Stat. (1991). In any event, the hearsay evidence relating to Chavers lacks the necessary indicia of reliability. First, Chavers' statements were made several years after the trial. More importantly, at the evidentiary hearing Chavers feigned a memory loss and would not answer questions pertaining to his statements, thereby severely undermining the credibility of his statements. Further, some of the statements made by Chavers in the letters are contradictory and indicate that he told the truth at trial.[3] Therefore, the trial court correctly refused to admit the hearsay statements into evidence.
As for Taylor, we doubt that he was unavailable as a witness. Taylor was transferred from the county jail to a prison facility in another locality before he was called to testify at the evidentiary hearing because defense counsel failed to inform jail personnel of their intent to call him as a witness. In any event, Taylor's letter does not fall within any of the exceptions for hearsay, regardless of his availability. See §§ 90.803, 90.804, Fla. Stat. (1993).
Lightbourne argues that Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), controls his case and requires that the evidence be admitted regardless of section 90.804. We disagree. In Chambers, the United States Supreme Court determined that due process considerations overcame Mississippi's hearsay rule when the hearsay statements in question involved a third person who orally confessed to the murder for which the defendant was charged. Id. at 287, 93 S.Ct. at 1042. In addition to being critical to the defendant's defense, the statements in Chambers bore indicia of reliability, were made spontaneously, were corroborated by other evidence, and were unquestionably against interest. Id. at 300-01, 93 S.Ct. at 1048-49. As the evidence in the instant case does not meet the Chambers hearsay criteria,[4]Chambers does not control in this case.
*58 At the evidentiary hearing, Lightbourne introduced a document signed by the sheriff of Marion County showing that on February 12, 1981, the sheriff authorized the payment of $200 to Chavers by Detective LaTorre. Lightbourne asserts that this information is of particular importance because although Chavers gave his first statement to LaTorre on February 2, 1981, he gave his second and most detailed statement on February 12, 1981, immediately after receiving the $200. Lightbourne argues that information pertaining to the timing of the payment was withheld by the State and since the information was material as an impeachment tool challenging Chavers' credibility as well as material to prove an agency relationship between Chavers and the State, a Brady violation occurred.
A Brady violation occurs where the State suppresses evidence favorable to an accused if that evidence is material to guilt or punishment. Brady, 373 U.S. at 87, 83 S.Ct. at 1197. Evidence is material, however, "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). At the trial Chavers testified that he received a payment of $200 from the sheriff's office sometime after his February 10, 1981, release from jail. Detective LaTorre also testified at the trial that he made a $200 payment to Chavers after Chavers was released from jail. We do not find that defense counsel's failure to ask questions about the timing of the payment with relation to the second statement indicates that the State withheld this information. Further, we fail to see where evidence showing that the payment was made to Chavers before he made the more incriminating second statement would have benefitted Lightbourne. If anything, the fact that the payment was made before rather than after the second statement was made only lends credibility to the statement. Therefore, we find that the evidence regarding the $200 payment would not have affected the result of the trial and does not constitute a Brady violation.
Lightbourne further points out that he was not notified by the State when Detective LaTorre contacted the judge regarding Chavers' early release from jail in return for his cooperation with the State. He also introduced evidence that the escape charge pending against Chavers at the time of his incarceration with Lightbourne was dismissed before the trial. Evidence was also presented that, contrary to Chavers' testimony at trial, Chavers was not bonded out on the charges on which he was being held at the time he made his statements to police but rather was released on his own recognizance. In addition, testimony at the hearing indicated that Chavers was released on bond on a charge that occurred between his February 10 release and the trial and that the bondsman did not charge him for the bond. Lightbourne argues that the State did not provide him with any of this information and, therefore, a Brady violation occurred.
We reject this argument for several reasons. First, the record shows that LaTorre's contacts with the judge about Chavers' release were fully covered at the trial. Next, all of the information in question was a matter of public record which was discoverable at the time of the trial. Finally, pursuant to Bagley, none of this evidence is sufficient to constitute a Brady violation, because even if the evidence had been disclosed, we do not find that it would have affected the outcome of the trial.[5]
Under an alternative theory, Lightbourne argues that the evidence in question constitutes newly discovered evidence. Upon a claim of newly discovered evidence, a determination should be made by the court as to whether or not such evidence, had it been introduced at the trial, would probably have resulted in an acquittal. See Jones v. State, 591 So.2d 911 (Fla. 1991). Under this analysis, *59 we do not find that evidence in question constitutes newly discovered evidence.[6]
Lightbourne also argues that the jury instruction regarding the heinous, atrocious, or cruel aggravating factor and the instruction regarding the cold, calculated, and premeditated aggravating factor were unconstitutionally vague. However, although Lightbourne did object to these aggravating circumstances, he did so only on the grounds that the evidence did not support the instructions. Because Lightbourne did not make a specific objection as to the validity of the instructions, the claim is not preserved for appeal. James v. State, 615 So.2d 668 (Fla. 1993); Johnson v. Singletary, 612 So.2d 575 (Fla.), cert. denied, ___ U.S. ___, 113 S.Ct. 2049, 123 L.Ed.2d 667 (1993).
We reject without discussion Lightbourne's claim that the death penalty statute is unconstitutional and his claim that this Court previously incorrectly denied his claim that the jury was improperly deprived of a copy of the presentence investigation report.
We affirm the order denying postconviction relief.
It is so ordered.
GRIMES, C.J., OVERTON, SHAW, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
NOTES
[1] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[2] § 90.804, Fla. Stat. (1991).
[3] It should also be noted that the letters were written by Chavers in an attempt to manipulate the State so that he could get out of jail.
[4] The only evidence introduced at the evidentiary hearing corroborating Lightbourne's proffered hearsay evidence was testimony by Richard Carnegia who also shared a cell with Lightbourne and Chavers at the county jail. Carnegia testified that Chavers approached him and told him that if he wanted to get out of jail, he should say he heard Lightbourne say he killed somebody.

Further, unlike the prosecution in Chambers, the State in the instant case had significant evidence to prove its case against the defendant including: (1) Lightbourne was in possession of the gun used in the murder; (2) a casing in Lightbourne's possession matched a casing found at the murder scene; (3) pubic hair and semen at the scene matched that of Lightbourne; (4) the victim's necklace was found in Lightbourne's possession; (5) Lightbourne worked at the victim's family's horse farm where it was common knowledge among employees that the family would be out of town at the time of the murder.
[5] We note that the evidence from the trial and the evidentiary hearing shows that Lightbourne was in jail on unrelated charges and was not a suspect in the murder when Detective LaTorre got an unsolicited call from Chavers. The evidence also shows that Chavers and Carson relayed details about the murder to police that were fully corroborated by other evidence.
[6] Much of the evidence could not even be characterized as newly discovered because it has been known or should have been known for many years.