707 So.2d 688 (1998)
Johnny L. ROBINSON, Appellant,
v.
STATE of Florida, Appellee.
No. 86136.
Supreme Court of Florida.
February 12, 1998.
Rehearing Denied April 1, 1998.
*689 John W. Moser, Capital Collateral Regional Counsel; Peter N. Mills, Gail E. Anderson and John M. Jackson, Assistant Capital Collateral Regional Counsels, Middle Region, Tampa, for Appellant.
Robert A. Butterworth, Attorney General and Judy Taylor Rush, Assistant Attorney General, Daytona Beach, for Appellee.
PER CURIAM.
Johnny L. Robinson, a prisoner under sentence of death, appeals an order entered by the trial court below pursuant to Florida Rule of Criminal Procedure 3.850. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed below, we affirm the denial of Robinson's motion for postconviction relief.

PROCEDURAL HISTORY
The facts of this case are detailed in Robinson's initial direct appeal, Robinson v. State, 520 So.2d 1 (Fla.1988), wherein we *690 affirmed his first-degree murder, kidnaping, armed robbery, and sexual battery convictions, but vacated all sentences, including his sentence of death, and remanded for resentencing because "[t]he prosecutor's comments and the questions [to Robinson's medical expert] about the race of the victims of [Robinson's] prior crimes ... easily could have aroused bias and prejudice on the part of the jury." Id. at 7. Upon resentencing, the jury again returned an advisory verdict recommending the death sentence, which the trial court imposed. We affirmed the death sentence on direct appeal. Robinson v. State, 574 So.2d 108 (Fla.1991).
Robinson filed his 3.850 motion to vacate judgment and sentence on May 17, 1993, asserting seventeen claims for relief. A pre-trial hearing was held on June 22, 1994, in order to determine whether an evidentiary hearing was required. On July 14, 1994, the trial court summarily denied claims VI, VII, IX, X, XI, XII, XIII, XIV, and XVI as procedurally barred, denied claim XV regarding allegedly improper doubling of aggravators on the basis of Derrick v. State, 641 So.2d 378 (Fla.1994), and denied claim XVII, a public records request, on the basis that Robinson had ample time to obtain any requested documents. The court stated that it intended to give further consideration to claim VIII on the basis of the record and ordered an evidentiary hearing on claims I, II, III, IV, and V. The evidentiary hearing on those claims was held on August 29, 30, and 31, 1994. The trial court subsequently denied all relief on June 8, 1995.

APPEAL
Robinson raises eleven claims of error in this appeal,[1] several of which we find may be disposed of summarily.[2] We address the remaining issues in turn.

NEWLY DISCOVERED EVIDENCE
First, Robinson claims that he is innocent of first-degree murder in the death of Beverly St. George because the only contrary evidence was co-defendant Clinton Fields' testimony, which he has allegedly repudiated in a sworn affidavit. However, it is undisputed that Robinson confessed to the crime, originally claiming that he "accidentally" shot the victim first when she resisted his sexual advances, but then intentionally shot her again, saying that he "had to" because no one would believe "I accidentally shot a white woman." He now argues that Fields' trial testimony was the only direct evidence to support significant aggravators and to rebut the defense *691 argument that Robinson did not commit an intentional murder. Robinson also asserts that Fields' oral statement to Captain Porter was entirely consistent with his affidavit and supported an accidental shooting defense.[3] We find no error in the trial court's denial of relief on this claim following an evidentiary hearing at which Fields did not testify.
We recently reiterated the proper standards by which a trial court must evaluate both newly discovered evidence and recanted testimony. First, to qualify as newly discovered evidence, "the asserted facts `must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known them by the use of diligence.'" Blanco v. State, 702 So.2d 1250, 1252 (Fla.1997) (quoting Jones v. State, 591 So.2d 911, 916 (Fla.1991)). If the proffered evidence meets the first prong, to merit a new trial the evidence must substantially undermine confidence in the outcome of the prior proceedings or "the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial." Blanco, 702 So.2d at 1252 (quoting Jones, 591 So.2d at 915).
In assessing recanted testimony, we have stressed caution, noting that it may be unreliable and trial judges must "examine all of the circumstances in the case." State v. Spaziano, 692 So.2d 174, 176 (Fla.1997) (citing Armstrong v. State, 642 So.2d 730, 735 (Fla. 1994)). Accordingly, "[r]ecantation by a witness called on behalf of the prosecution does not necessarily entitle a defendant to a new trial." Spaziano, 692 So.2d at 176 (quoting Armstrong, 642 So.2d at 735). That is the purpose of an evidentiary hearing.[4]
First and foremost, we note that Fields' new version of events has never been subjected to adversarial testing since he has pointedly refused on several occasions to expose himself to cross-examination. The absence of direct testimony by the alleged recanting witness is fatal to this claim. In the end, therefore, Fields' unauthenticated, untested affidavit proffered by Robinson is nothing more than hearsay, i.e., an out-of-court statement offered to prove the truth of the matter asserted, which is inadmissible because Robinson does not claim, nor do we find, that it comes within any hearsay exception.
We addressed this issue in Lightbourne v. State, 644 So.2d 54 (Fla.1994). There, the defendant sought to introduce several affidavits and letters into evidence at a 3.850 evidentiary hearing in support of his Brady[5] claim. Offered as evidence was Theodore Chavers' affidavit made in 1989, almost eight years after trial. Id. at 56. Chavers, who had testified at trial regarding incriminating statements made by Lightbourne while they were incarcerated together, stated in his affidavit that investigators told him that several charges against him would be dropped if he informed against Lightbourne and that state attorneys urged him to lie at trial about his jailhouse conversation with Lightbourne. The trial court declined to admit any of the proffered evidence, including Chavers' 1989 affidavit, after finding that none of the hearsay statements fell within any exception to the hearsay rule. Id.
On appeal, we examined section 90.804(2)(c), Florida Statutes (1991),[6] the *692 statement against interest hearsay exception,[7] and found no error in the trial court's refusal to admit the hearsay statements into evidence. Id. at 57. We reasoned that:
Although Chavers states in his affidavit and in one of the letters that he lied at trial, it cannot be said that a reasonable person would believe they were subject to a perjury penalty eight years after providing testimony at a trial. As the lower court pointed out, the statute of limitations had run so that Chavers could no longer be prosecuted for perjury. See §§ 775.15(2)(b) and 837.02, Fla. Stat. (1991). In any event, the hearsay evidence relating to Chavers lacks the necessary indicia of reliability. First, Chavers' statements were made several years after the trial. More importantly, at the evidentiary hearing Chavers feigned a memory loss and would not answer questions pertaining to his statements, thereby severely undermining the credibility of his statements.

Id. (emphasis added).
As in Lightbourne, we find that the hearsay evidence presented in this case does not expose Fields to criminal liability[8] and lacks the requisite indicia of reliability for admission under section 90.804(2)(c), Florida Statutes (1993).[9] As stated by Professor Ehrhardt, this requirement "insures that a confession by a third party will not be admissible when there are serious questions as to its reliability." Charles W. Ehrhardt, Florida Evidence § 804.4, at 749 (1997 ed.). Fields' belated change of story and his repeated refusal to expose himself to cross-examination on this issue severely erode the reliability of his 1993 affidavit and bars its admission as competent evidence.
Moreover, unlike Spaziano, there is no "independent corroborating evidence" that supports Fields' new version of events. 692 So.2d at 176. As will be addressed in greater detail below, no specific mention of an "accidental" shooting appears in Captain Porter's deposition. Further, Fields related to Porter that Robinson "raped" the victim and that he, Fields, did not rape the victim. This rendition is plainly inconsistent with the version in Fields' affidavit that "we had sex with the lady." (Emphasis added.) In Spaziano, we also noted that "[c]ommon sense dictates that the trial judge, in order to make a just decision, must be able to look at all the evidence presented in the case that affects the testimony of the recanting witness. The context in which the statements are made is crucial to gauge the credibility of the witness." Id. at 177. Unlike Spaziano, the trial judge here was not provided the direct testimony of the alleged recanting witness. Even so, the trial judge looked at the totality of the circumstances surrounding Fields' alleged recantation; he also presided over Robinson's original trial and had found Fields' original testimony "highly credible." Therefore, we do not find that the trial judge abused his discretion in viewing Fields' affidavit with "great suspicion," in refusing to allow the affidavit into evidence, or in denying Robinson relief on this issue. Lightbourne; see also Sliney v. State, 699 So.2d 662 (Fla.1997) (finding competent, substantial evidence in record supporting trial judge's finding of insufficient corroborating circumstances to establish trustworthiness of allegedly exculpatory hearsay statement), petition *693 for cert. filed, ___ U.S. ___, 118 S.Ct. 1079, ___ L.Ed.2d ___ (1998).

BRADY/GIGLIO CLAIMS[10]
At the outset, these issues appear to be procedurally barred since they should have been raised on direct appeal. Rose v. State, 675 So.2d 567, 569 n. 1 (Fla.1996). As to the merits, Robinson must prove the following to substantiate his Brady claim:
(1) that the Government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.
Hegwood v. State, 575 So.2d 170, 172 (Fla. 1991) (quoting United States v. Meros, 866 F.2d 1304, 1308 (11th Cir.1989)). From the facts before it, the trial court concluded that there was evidence that defense counsel Howard Pearl was "provided with the State's Answer to the Demand for Discovery prior to trial and that the Answer listed Captain Porter and next to his name had the notation `statement of Fields.'" The trial judge then attached the relevant portion of the hearing transcript to his order.
In applying the Brady test to the facts, it is debatable whether this evidence was "favorable" to the defendant; it appears that Robinson either had or could have easily obtained this deposition, thus not satisfying the second prong; it does not appear that the prosecution "suppressed" the evidence; and, we conclude that no "reasonable probability exists" that the proceeding's outcome would have been substantially affected if Robinson had this information. Therefore, Robinson has not carried his burden in substantiating his Brady claim.
The trial judge also concluded that Robinson did not prove that the State knowingly presented false testimony from Fields at trial in violation of Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). To establish a Giglio violation, Robinson must show, "(1) that the testimony was false; (2) that the prosecutor knew the testimony was false; and (3) that the statement was material." Craig v. State, 685 So.2d 1224, 1226 (Fla.1996). We have observed that, "[t]he thrust of Giglio and its progeny has been to ensure that the jury know the facts that might motivate a witness in giving testimony, and that the prosecutor not fraudulently conceal such facts from the jury." Id. at 1226-27 (quoting Routly v. State, 590 So.2d 397, 400 (Fla.1991)).
In Craig, the prosecutor knew for a fact that Craig's co-defendant was in a work-release program with an imminent presumptive parole release date. Id. at 1228. The co-defendants each claimed that the other was more culpable, and their credibility with the jury was a critical factor in determining which one ultimately was found more culpable. Further, in reaching a sentencing decision, one of the factors the jury must consider and weigh was any disparity between their culpability and penalties. Id. Because the prosecutor falsely represented the severity of the co-defendant's penalty and "convey[ed] to the jury that Craig's codefendant would never be released from prison," we found a Giglio violation had been established and accordingly required a new hearing. Id. at 1228.
In this case, the facts are not so clear cut. The relevant passage in Porter's deposition is brief and somewhat ambiguous. While the deposition certainly does not include Fields' statement that Robinson told him he planned to kill the victim because she could identify them, neither does it say that the killing was an accident. Instead, it was a second-hand, unrecorded rendition of what Fields told Captain Porter. Therefore, we find no error in the trial court's determination that Robinson has not met the test required to establish a Giglio violation.
Nevertheless, Robinson makes the alternative claim that if defense counsel received *694 this information and for some reason decided not to use it to attack Fields' credibility, he may have rendered ineffective assistance. To establish a claim of ineffective assistance of counsel, a petitioner must first demonstrate that counsel's performance was deficient, and, second, that there was a reasonable probability that but for counsel's deficient performance, the proceeding's outcome would have been different. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, the Supreme Court has afforded attorneys wide latitude in conducting the defense of a case and, accordingly, has placed a significant burden on those petitioners alleging ineffective assistance of counsel. To that end, the Court observed that:
A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance....
Id. at 689, 104 S.Ct. at 2065. Therefore, in order to prevail, Robinson must demonstrate that Pearl's conduct fell outside the "wide range of reasonable professional assistance," and, if it did, establish the resulting prejudice.
Obviously, since Fields' trial testimony "completely contradicted Robinson's version of the crimes," Robinson, 574 So.2d at 110, his credibility was a key issue in the case. Porter's deposition related that Robinson and Fields pulled up behind the victim's parked car and that Robinson got out of his car, walked up to the victim's car, and then pulled out a gun. This tracks Fields' trial testimony, although there was no mention in Porter's deposition that the victim was handcuffed after being brought to Robinson's car at gunpoint. Robinson, 574 So.2d at 110. Porter then stated that they drove to the cemetery and, in Fields' words, Robinson "raped" the victim. Again, this tracks Fields' trial testimony. However, Porter then stated that Fields told him he did not rape the victim, contrary to his testimony at trial where he said that Robinson ordered him to rape the victim and he complied.
Eventually, Porter described what Fields told him about the shooting. He stated:
Fields said something to the effect of, somehow or another in the conversation that Robinson had called her a bitch and at that point, she either pushed him or slapped at him or something like that and in turn, he slapped back at her or used his gun to threaten her with and that's when he shot her. That's when Robinson shot her.
As the State notes, no mention of an "accident" appears in Porter's deposition. Yet, this rendition is at least somewhat inconsistent with Fields' trial testimony that "Robinson expressed concern that she could identify them. He then walked up to her and put the gun on her cheek. Fields heard a shot, saw St. George fall, and watched Robinson stand over her and fire a second shot." Robinson, 574 So.2d at 110.
Based on these facts, defense counsel Pearl's performance was arguably deficient if he had access to Porter's deposition but chose not to use it in attacking Fields' credibility. Assuming that was the case, Robinson still must prove to the trial court that he was prejudiced by Pearl's deficient performance. Here, the jury knew that Fields was a co-defendant testifying as a State witness and that he had an agreement with the State which was brought out in detail on cross-examination. The prosecutor had also described the agreement in detail during Fields' deposition taken April 24, 1986. Based on those known facts, the trial court could conclude that the jury had "ample information from which to assess [Fields'] credibility and weigh [his] testimony accordingly," see Chandler v. State, 702 So.2d 186, 198 (Fla.1997), and, accordingly, we find no error in the trial court's conclusion that Robinson has failed to demonstrate sufficient prejudice to merit a new trial.

FULL AND FAIR EVIDENTIARY HEARING
Robinson next argues that he was denied a full and fair evidentiary hearing *695 because the trial judge denied funding for the transportation of fifty-two out-of-town witnesses and because the judge allowed only eight witnesses to testify. We find no merit in Robinson's claim under the circumstances presented here.
Section 90.403, Florida Statutes (1993), provides that "[r]elevant evidence is inadmissible if its probative value is substantially outweighed by the ... needless presentation of cumulative evidence." Alternatively, as Professor Ehrhardt has observed, section 90.612(1)(b) also "recognizes the trial judge's responsibility to reasonably control the interrogation of witnesses and the presentation of evidence so as to `avoid a needless consumption of time.'" Charles W. Ehrhardt, Florida Evidence § 403.1 at 135 (1997 ed.). Under either basis, we find that the trial court acted within its discretion in denying expenses for Robinson's fifty-two out-of-town witnesses. The trial court reviewed the proffered witnesses' affidavits and concluded that the testimony of many of the witnesses would be marginal and "cumulative." Robinson still had the opportunity to present testimony about his abusive childhood through numerous witnesses and to present even more detailed mental health testimony through the expert, Dr. Harvey Krop. Accordingly, we find that the trial court acted within its discretion on this record in limiting the presentation of evidence it deemed "cumulative."

PENALTY PHASE ASSISTANCE OF COUNSEL
Robinson next claims that defense counsel Pearl's performance was deficient during the penalty phase of his resentencing because he allegedly failed to investigate mitigation. We find that although counsel's performance may have been deficient in some respects, Robinson cannot demonstrate that he was so prejudiced as to merit a new penalty phase proceeding.
To merit relief, Robinson must show not only deficient performance, but also that the deficient performance so prejudiced his defense that, without the alleged errors, there is a "reasonable probability that the balance of aggravating and mitigating circumstances would have been different." Bolender v. Singletary, 16 F.3d 1547, 1556-57 (11th Cir.1994). See also Rose v. State, 675 So.2d 567, 570-71 (Fla.1996); Hildwin v. Dugger, 654 So.2d 107, 109 (Fla.1995). Relevant factors for inquiry include counsel's failure to investigate and present available mitigating evidence, along with the reasons for not doing so. Rose, 675 So.2d at 571.
We recently dealt with a remarkably similar situation in Breedlove v. State, 692 So.2d 874 (Fla.1997). As Robinson does here, Breedlove alleged that counsel was ineffective for failing to investigate his background, failing to furnish mental health experts with relevant information which would have supported their testimony about mitigating factors, and failing to call family members and friends who would have testified about his childhood abuse, mental instability, and addiction to drugs and alcohol. Id. at 877. On appeal, we found as follows:
Based upon this review of the evidence, we do not find that the alleged deficient performance resulted in prejudice which meets the prejudice prong of the Strickland analysis. We therefore affirm the trial court's denial of the rule 3.850 motion on that basis.
First, we note that both psychologists who had testified at the penalty phase stated at the postconviction hearing that although additional information from Breedlove's counsel might have been helpful, their opinions were unchanged as to matters about which they had testified, even considering the additional information. We further note our finding in our 1995 opinion that "two state experts expressly stated that they found no evidence of organic brain damage or psychosis and one of them said Breedlove was malingering." Breedlove, 655 So.2d at 77. In light of these opinions, we do not conclude that but for counsel's alleged deficient performance with respect to the preparation of the experts, there is a reasonable probability that the result of the penalty phase would have been different.
Second, we do not agree that the failure to present the testimony of the friends and family members presented by Breedlove at the postconviction hearing meets the prejudice *696 standard. This evidence addressed essentially two subjects: the alleged beatings of Breedlove by his father and his drug addiction. Moreover, we agree with the State's response that the presentation of each of these witnesses would have allowed cross-examination and rebuttal evidence that would have countered any value Breedlove might have gained from the evidence.[n.4]
[n.4] For example, the State sought to introduce at the penalty phase rebuttal evidence that Breedlove had confessed to a similar murder in Broward County. Breedlove had admitted to burglarizing the home of a 63-year-old woman and to killing her. At the time of the original trial, Breedlove had not yet been convicted of this crime. Because Breedlove presented no evidence of his character, the court found that the prejudicial nature of this evidence outweighed its probative value.
Valle v. State, 581 So.2d 40, 49 (Fla.1991); Medina v. State, 573 So.2d 293, 298 (Fla. 1990) (finding no ineffectiveness in not presenting witnesses where they would have opened the door for the State to explore defendant's violent tendencies).
Even if the trial court had found mitigating circumstances in additional testimony from lay witnesses, the three aggravating factors we have previously affirmed overwhelm whatever mitigation the testimony of Breedlove's friends and family members could provide.[n.5]
[n.5] Breedlove, 655 So.2d 74, 76 (1995).
We addressed the effects of this type of claimed mitigation in Tompkins v. Dugger, 549 So.2d 1370, 1373 (Fla.1989), a case which is strikingly similar. In Tompkins, the defendant was convicted of the strangulation murder of a fifteen-year-old girl. The defendant claimed ineffective assistance of counsel, asserting that counsel failed to investigate and present evidence of mitigation in the penalty phase. The trial court found that even though counsel was deficient in that regard, the mitigating evidence overlooked by counsel would not have changed the outcome and therefore did not demonstrate prejudice under the Strickland test. This Court affirmed the trial court's finding that the factors of an abused childhood and drug addiction did not counter three aggravating circumstances of being especially heinous, atrocious, or cruel, of commission during a felony, and of prior violent felony convictions. Id. As here, the prior violent felonies were two rapes. See also King v. State, 597 So.2d 780 (Fla.1992); Mendyk v. State, 592 So.2d 1076, 1079-80 (Fla.1992); and Buenoano v. Dugger, 559 So.2d 1116, 1119 (Fla.1990). Similarly, the three aggravating factors the trial court set forth in Breedlove's sentencing overwhelm potential mitigating factors presented by witnesses at the 1992 postconviction hearing.
Id. at 877-78. Accordingly, we affirmed the trial court's denial of Breedlove's 3.850 motion because he failed to prove he was prejudiced by the non-presentation of additional mitigation. Id. at 878.
In this case, the trial court found three nonstatutory mitigators on resentencing: Robinson had a difficult childhood; Robinson suffered physical and sexual abuse during childhood; and Robinson had a psychosexual disorder. Robinson, 574 So.2d at 109 n. 3. The lay witnesses Robinson identifies certainly could have presented more testimony regarding the first two nonstatutory mitigators, as well as presenting good character evidence about some of the loving relationships Robinson has had with several women and the good deeds he has performed. However, as in Breedlove, the State could have presented, in rebuttal, evidence that less than one week after the St. George murder, Robinson allegedly committed an armed robbery and rape with Fields after coming upon a woman with a disabled car on the interstate.[11] In other words, those alleged crimes were an almost exact replay of what happened with Ms. St. George, minus the murder. *697 The trial court could have concluded that Pearl was not ineffective in not opening the door to this potentially devastating rebuttal evidence.
Similarly, Pearl's decision to solely rely on Dr. Krop's testimony, while questionable, is also defensible. Moreover, as the State notes, despite the new information provided by postconviction counsel, Krop still believes that Robinson has some type of personality disorder and still has some type of sexual disorder. That Robinson has had some loving relationships with women does not change the fact that he was previously convicted of rape in Maryland, probably raped Ms. St. George, and allegedly raped another woman five days after the St. George murder in a similar criminal episode.
With that said, Pearl certainly displayed suspect judgment in not "closing the loop" with Krop on investigating possible mitigation. Pearl should have been more proactive and more directly involved. In that sense, his performance was probably deficient. Yet, when taken as a whole, Robinson has not demonstrated error in the trial court's conclusion that no prejudice resulted from Pearl's relative inaction. Considering the five valid aggravators, the cumulative nature of the proffered lay testimony, and the modification of Krop's testimony, we find no error in the trial court's finding that Robinson has not demonstrated the prejudice necessary to mandate relief. Rose, 675 So.2d at 570; Breedlove. We affirm the trial court's denial of relief on this issue.

SUMMARY DENIAL OF INEFFECTIVE ASSISTANCE CLAIMS
Robinson next argues that trial court erroneously ruled that claims VI,[12] VII,[13] IX,[14] X,[15] XII,[16] XIII,[17] and XIV[18] were procedurally barred because he was improperly attempting "to relitigate substantive matters *698 under the guise of ineffective assistance." We find no merit in this claim.
Claim VI has been recast as claim (7) here and will be addressed separately. Claim VII below has been repackaged as claim (6) before this Court and will be addressed separately. As a matter of law, we find that claims IX, X, XIII and XIV below are procedurally barred because they could have been raised on direct appeal. Roberts v. Dugger, 568 So.2d 1255, 1257-58 (Fla. 1990); Atkins v. Dugger, 541 So.2d 1165, 1166 n. 1 (Fla.1989); Adams v. State, 380 So.2d 423, 424 (Fla.1980). Claim XII below is essentially a challenge to the all-white grand jury that indicted Robinson and the racial composition of the venire and resentencing jury.[19] For several reasons, we reject this claim.
First, this issue is procedurally barred since it could and should have been raised on direct appeal. See Spenkelink v. State, 350 So.2d 85 (Fla.1977). Second, even if this issue was properly before us, we would find it legally insufficient to merit relief because Robinson has failed to show that the venires from which jurors are drawn in St. Johns County systematically exclude distinctive groups in the community. We recently addressed the proper grounds under which such a claim must be brought in Gordon v. State, 704 So.2d 107 (Fla.1997):
The United States Supreme Court has set clear guidelines to ensure that juries are drawn from a fair cross section of society. In Taylor v. Louisiana, 419 U.S. 522, 538, 95 S.Ct. 692, 701-02, 42 L.Ed.2d 690 (1975), the Court held that "petit juries must be drawn from a source fairly representative of the community [although] we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population." To that end, while defendants are not entitled to a particular jury composition, "jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." Id. at 538, 95 S.Ct. at 702 (emphasis added). Accordingly, the Court invalidated those sections of Louisiana's constitution and criminal procedure code which precluded women from serving on a jury unless they expressly so requested in writing.
Several years later under slightly different facts, the Court invalidated a Missouri statute which provided an automatic exemption for any woman that asked not to serve on jury duty. Duren v. Missouri, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). To give effect to Taylor's fair cross-section requirement, the Court established a three-prong test for determining a prima facie violation thereof. Id. at 364, 99 S.Ct. at 668. The proponent must demonstrate:
(1) that the group alleged to be excluded is a `distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

Id. (emphasis added). Since the Court in Taylor had already found that women "are sufficiently numerous and distinct from men," 419 U.S. at 531, 95 S.Ct. at 698, Duren only needed to satisfy the last two prongs of the test. He did this by presenting statistical data which showed that women comprised over fifty percent of the relevant community but only approximately fifteen percent of the jury venires, Duren, 439 U.S. at 364-66, 99 S.Ct. at 668, and demonstrating that this large discrepancy "occurred not just occasionally but in every weekly venire for a period of nearly a year." Id. at 366, 99 S.Ct. at 669. The Court concluded that this undisputed trend "manifestly indicates that the cause of the underrepresentation was systematicthat is, inherent in the particular jury-selection *699 process utilized." Id. Thus the Court instituted the procedures for establishing a prima facie violation of the Sixth Amendment's fair cross-section requirement.
Id., 704 So.2d at 110-12. We concluded that because the process by which venires were drawn in Pinellas County was not challenged, and Gordon failed to substantiate a fair crosssection violation in accordance with Duren, his claim was legally insufficient to merit relief. Id. We make the same finding here because Robinson's claim similarly fails to establish a prima facie violation of the fair cross-section requirement. He made no showing at trial or in his postconviction motion that blacks are systematically excluded from venires in St. Johns County. Accordingly, the trial court did not err in summarily denying this claim.[20]
In the final analysis, most of these issues could and should have been raised on direct appeal and are procedurally barred, Maharaj v. State, 684 So.2d 726, 728 (Fla.1996), "even if couched in ineffective assistance language." Johnson v. Singletary, 695 So.2d 263, 265 (Fla.1996). We affirm the trial court's summary denial of these claims.

FIELDS' REFUSAL TO TESTIFY
Robinson argues that counsel was ineffective for not properly objecting to Fields' refusal to testify at his resentencing. This issue is without merit. Professor Ehrhardt has written that "[w]hen a witness refuses to testify concerning the subject matter of a hearsay statement in the face of court order to testify, she is `unavailable' pursuant to section 90.804(1)(b). The trier of fact and the parties are deprived of the testimony of the witness in the same way as when a witness successfully asserts a claim of privilege." Charles W. Ehrhardt, Florida Evidence § 804.1, at 732-33 (1997 ed.)(footnote omitted).
Prosecutor Alexander testified at Fields' federal habeas corpus proceeding that just prior to Robinson's resentencing trial, Thomas Cushman, Fields' attorney, told him, "Guess what, pal? Fields isn't going to testify for you again." He then reminded Cushman that their agreement was based on Fields' total cooperation, to which Cushman replied, "Well, that's too bad.... Fields isn't going to testify any more, and I'm telling him, you know, I'm recommending to him that he not testify." There is no dispute that, beginning with Robinson's resentencing in February 1989, Fields refused to testify for the State against Robinson. Whether this violated the agreement with the State to, in Fields' words, "help the State convict Johnny Robinson," is debatable.
However, Robinson cannot dispute that the following exchange took place at Fields' April 24, 1986, deposition:
Mr. Cushman: There was also a discussion that at the completion and exhaustion of the State appeal remedies, that if necessary, the State would write a letter indicating Mr. Fields' cooperation to the Governor and Cabinet at the Board of Pardons and Parole.
Mr. Alexander: Yes, I would, based on the fact that he fully cooperated, and in my opinion told the truth in regards to the matters that occurred during the first couple of weeks of August of 1985.
(Emphasis added.) For this reason, there does not appear to be any "procurement or wrongdoing" on the State's part which would nullify Fields' status as an unavailable witness. § 90.804, Fla. Stat. (1991). Therefore, we find that the trial judge did not abuse his discretion in denying Robinson relief on this issue.

CROSS-EXAMINATION OF FIELDS
Robinson claims that counsel was ineffective in his initial cross-examination of Fields since he did not elicit the extent of Fields' drinking on the night of the murder, *700 nor did he highlight that Fields' deal with the State provided him with an incentive to lie. The trial court denied the various sub-claims as procedurally barred. Although we conclude that not all of Robinson's sub-claims were barred, we nonetheless find no merit to this claim.
First, regarding Fields' oral statement to Captain Porter, the State is correct that Fields did not say the shooting was an accident. In total, Porter related:
Fields said something to the effect of, somehow or another in the conversation that Robinson had called her a bitch and at that point, she either pushed him or slapped at him or something like that and in turn, he slapped back at her or used his gun to threaten her with and that's when he shot her. That's when Robinson shot her.
In his affidavit, Fields described the same scene, but then stated, "I truly believe it was an accident but I can't say for sure because I could not see from where I was. I do not believe that Johnny meant to shoot the lady." Fields is obviously hedging his original trial testimony in his affidavit, while not stating flatly that the shooting was an "accident." Therefore, while Pearl probably could have pressed Fields more on this issue, Robinson has not demonstrated deficient performance. Moreover, as the State notes, Pearl did establish Fields' motive to he by detailing his deal with the prosecutor for a lighter sentence in exchange for his cooperation in Robinson's case.
Next, Robinson's claim regarding Fields' alleged intoxication that night is somewhat dubious considering Fields' detailed affidavit eight years after the murder. Also, the sub-claim regarding Fields' alleged susceptibility to police pressure and low IQ is procedurally barred since the issue was not raised below. Further, the issue as to Robinson's alleged intoxication should have been raised on direct appeal and, indeed, it was raised and rejected by this Court in Robinson's first appeal. Robinson v. State, 520 So.2d 1, 5 (Fla.1988). The State also correctly notes that Robinson's detailed confession casts doubt on any claim he was intoxicated at the time of the offenses. Robinson's argument regarding the jury instruction on weighing Fields' testimony is also procedurally barred since this issue was raised and rejected on direct appeal. Robinson, 574 So.2d at 110-11. Even if it had not been raised, it is the type of claim that should be raised on direct appeal. Gorham v. State, 521 So.2d 1067, 1070 (Fla.1988). Finally, the claim regarding leading questions is a substantive claim improperly recast in ineffective assistance language as a second appeal. Medina v. State, 573 So.2d 293, 295 (Fla. 1990).

CONCLUSION
Accordingly, after a thorough review, and for the reasons expressed above, we affirm the trial court's denial of relief.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, HARDING and ANSTEAD, JJ., concur.
WELLS, J., and GRIMES, Senior Justice, concur in result only.
NOTES
[1] Robinson's claims are: (1) whether the trial court erred in denying Robinson's claim that newly discovered evidence established his innocence; (2) whether the trial court erred in denying Robinson's Brady/Giglio claim; (3) whether Robinson received a full and fair evidentiary hearing; (4) whether Robinson received effective assistance of counsel during the penalty phase; (5) whether the trial court erred in denying claims of ineffective assistance as improper attempts to relitigate substantive issues; (6) whether the trial court erred in denying an ineffectiveness claim based on counsel's alleged failure to properly object to witness Clinton Fields' refusal to testify; (7) whether counsel was ineffective in cross-examining Fields; (8) whether the jury weighed invalid and vague aggravators; (9) whether the trial court erred in denying Robinson's request to amend his motion after receiving additional public records; (10) whether the trial court erred in finding Robinson's race discrimination claim procedurally barred; and (11) whether the trial court erred in denying Robinson's other ineffectiveness claims.
[2] The various sub-claims in claim (8) either were raised on direct appeal, Robinson, 574 So.2d at 113 n. 6, or should have been raised. Clark v. State, 690 So.2d 1280, 1282 n. 3 (Fla.1997); Chandler v. Dugger, 634 So.2d 1066, 1069 (Fla. 1994). Moreover, we recently rejected a mirror image of Robinson's claim regarding alleged improper doubling of the avoid arrest and cold, calculated, and premeditated (CCP) aggravators. See Gore v. State, 706 So.2d 1328 (Fla.1997) (citing Stein v. State, 632 So.2d 1361, 1366 (Fla. 1994)). Here, the two aggravators are "not merely restatements of each other," Banks v. State, 700 So.2d 363, 367 (Fla.1997), pet. for cert. filed, ___ U.S. ___, 118 S.Ct. 1314, ___ L.Ed.2d ___ (1998), in contrast to, for example, murder committed to avoid arrest and murder committed to hinder law enforcement. Therefore, this claim is also without merit. Claim (9) is without merit since it seeks to obviate the available remedy for bringing a claim should a basis therefor appear in any subsequently provided records. We find claim (10) to be procedurally barred because it should have been raised on direct appeal. Claim (11) is meritless because its conclusory statements regarding counsel's alleged ineffectiveness are factually and legally insufficient to provide a basis for relief.
[3] Captain Robert Porter was the St. Johns County Sheriff's lead investigator in the St. George murder. He was deposed on February 21, 1986, by Thomas Cushman, Fields' court-appointed attorney, and prosecutor James Alexander. Shortly after Robinson and Fields were arrested as suspects in the St. George murder, Fields gave an unrecorded oral statement to Captain Porter. The details of that statement were explored at length during the deposition by both attorney Cushman and prosecutor Alexander.
[4] We note that the trial court properly held an evidentiary hearing on Fields' recanted testimony because his affidavit qualifies as newly discovered evidence. See Roberts v. State, 678 So.2d 1232, 1235 (Fla.1996); Jones v. State, 591 So.2d 911, 915-16 (Fla.1991).
[5] Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963) (holding that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution").
[6] Before a statement can even be considered as a possible exception to the hearsay rule under section 90.804, the declarant must be found unavailable as a witness within the meaning of section 90.804(1). In Lightbourne, Chavers was found in contempt of court and declared unavailable as a witness because, alternatively, he suffered from a lack of memory, section 90.804(1)(c), and he refused to answer questions, section 90.804(1)(b). 644 So.2d at 56.
[7] That hearsay exception is defined as:

A statement which, at the time of its making, was so far contrary to the declarant's pecuniary or proprietary interest or tended to subject him to liability or render invalid a claim by him against another, so that a person in the declarant's position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is inadmissible, unless corroborating circumstances show the trustworthiness of the statement.
[8] Because Fields testified against Robinson in 1986, a prosecution for perjury, a third-degree felony, would have to be brought by 1989, within three years after the alleged perjury was committed. See §§ 775.15(2)(b), 837.02(1), Fla. Stat. (1993).
[9] The 1993 statute is exactly the same as the 1991 statute.
[10] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).
[11] The St. George murder occurred in the early morning hours on August 12, 1985. Jennifa Bashford and three others were robbed in the early morning hours on August 17, 1985. Ms. Bashford was allegedly raped by Robinson after the robbery. According to the arrest docket in that case, some of the articles stolen from the victims were later found in a search of Robinson's car. However, the charges in that case against Robinson were later dropped after he was convicted of murder in this case.
[12] As presented to the trial court, claim VI alleged that "Mr. Robinson was denied effective assistance of counsel by Pearl's deficient handling of the main witness against Mr. Robinson, Clinton Bernard Fields, including a poor cross examination and impeachment, a poor inquiry at deposition and trial into Mr. Robinson's intoxication, and a failure to object to leading questions on direct examination, all in violation of the sixth, eighth, and fourteenth amendments to the United States Constitution and article I, §§ 9, 16, 17, 21, and 22 of the Florida Constitution." Motion to Vacate Judgment of Conviction and Sentence at 170.
[13] "Mr. Robinson was denied effective assistance of counsel by Pearl's failure to object on proper grounds or to force an inquiry into the reasons for Fields' refusal to testify after Fields' Fifth Amendment claim was rejected by the trial court, in violation of the sixth, eighth, and fourteenth amendments to the United States Constitution and article I, §§ 9, 16, 17, 21, and 22 of the Florida Constitution." Motion to Vacate Judgment of Conviction and Sentence at 201.
[14] "The state attorney deliberately injected racial prejudice at the original trial, in violation of Mr. Robinson's rights under the sixth, eighth, and fourteenth amendments to the United States Constitution and article I, §§ 2, 9, 16, and 17 of the Florida Constitution." Motion to Vacate Judgment and Conviction at 246.
[15] "Trial counsel's failure to prevent the State attorney from infecting the trial with racial prejudice deprived Mr. Robinson of his rights to the effective assistance of counsel, equal protection, and a fair trial, in violation of the fifth, sixth, eighth, and fourteenth amendments to the United States Constitution and article I, §§ 2, 9, 16, and 17 of the Florida Constitution." Motion to Vacate Judgment of Conviction and Sentence at 252.
[16] "Mr. Robinson was denied the effective assistance of counsel by his attorney's failure to conduct jury selection in a reasonably professional manner, in violation of the sixth, eighth, and fourteenth amendments to the United States Constitution and article I, §§ 9, 16, 21, and 22 of the Florida Constitution." Motion to Vacate Judgment of Conviction and Sentence at 275.
[17] "Mr. Robinson was denied effective assistance of counsel because Pearl failed to object to numerous improper arguments by the prosecutor in closing, and failed to request a mistrial because of improper arguments, all in violation of the sixth, eighth, and fourteenth amendments to the United States Constitution and article I, §§ 9, 16, 21 and 22 of the Florida Constitution." Motion to Vacate Judgment of Conviction and Sentence at 310.
[18] "The prosecutor's improper closing arguments at penalty phase rendered Mr. Robinson's death sentence unreliable, and Mr. Robinson was denied effective assistance of counsel at penalty phase by Pearl's failure to object thereto, in violation of the sixth, eighth, and fourteenth amendments to the United States Constitution and article I, §§ 9, 16, 17, 21, and 22 of the Florida Constitution." Motion to Vacate Judgment of Conviction and Sentence at 324.
[19] Robinson's resentencing jury consisted of ten white females, one black female, and one white male.
[20] We also note that the trial judge properly ruled that Robinson "does not have a right to have a jury composed in whole or in part of persons of his own race." In giving effect to the Sixth Amendment's fair cross-section requirement, the Supreme Court has focused on the process by which venires are selected and from which juries are drawn, while explicitly "impos[ing] no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population." Taylor v. Louisiana, 419 U.S. 522, 538, 95 S.Ct. 692, 702, 42 L.Ed.2d 690 (1975).