EMAS, J.
 

 Arold Merritt (“Merritt”) seeks review of the trial court’s order summarily denying his motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. For the reasons that follow, we reverse and remand this cause to the trial court with directions to conduct an evidentiary hearing.
 

 FACTS AND PROCEDURAL BACKGROUND
 

 Merritt was arrested in 1994 and charged with first-degree murder, two
 
 *938
 
 counts of armed robbery, and possession of a firearm during the commission of a felony. Following a jury trial, Merritt was convicted and sentenced to life in prison. His convictions and sentences were affirmed on direct appeal.
 
 Merritt v. State,
 
 687 So.2d 72 (Fla. 3d DCA 1997).
 

 On September 29, 2009, Merritt filed the instant motion for postconviction relief, based upon newly-discovered evidence. Merritt attached to his motion three affidavits, the averments of which we summarize as follows:
 

 1.
 
 Affidavit of Anthony Nottage
 
 (dated April 29, 2009). Nottage averred that he was being held at the Dade County Jail in 2006 when he observed an argument between Merritt and a person known as “Ced.” Nottage learned from others that their argument stemmed from Ced having committed the murder for which Merritt had been charged. Nottage later spoke with Ced and learned his full name was Cedric Brantley. Nottage asked Brantley about the earlier argument between him (Brantley) and Merritt. Brantley told Nottage that “he and Merritt were about to fight because he [Brantley] refused to come forth with ‘the truth’ that he [Brant-ley] had shot the victim for personal reasons that were unrelated to the fight in which Merritt and his co-defendant were engaged.” Nottage did not see Merritt again until 2009; at that time he told Merritt about this conversation with Brantley.
 

 2.
 
 Affidavit of Emmanuel Charles
 
 (dated June 3, 2009). Charles averred that while in prison in 2004 he had a conversation with Cedric Brantley. At one point the two began talking about Merritt. Charles stated that during this conversation, Brantley “admitted to me that Merritt did not commit the ‘M-one’ that he was in prison for and oddly began to laugh.” When Charles asked Brantley why he was laughing, Brantley replied: “How the shit happened, that’s all. How it happened.” The next time Charles saw Merritt was in 2009, and he told Merritt about this conversation with Brantley.
 

 3.Affidavit of Willie Mercer
 
 (dated May 14, 2009). Mercer averred that while in prison in 2003 he was housed with an inmate named Cedric Brantley. Mercer stated that Brantley already was serving a sentence for murder. Mercer asked Brantley why, if Brantley was already in prison for murder, he would not free Merritt.
 
 [1]
 
 Mercer states that Brantley replied “that he was not going to help Merritt until he was sure that he had no possible way of getting out of prison.” The next time Mercer saw Merritt (in 2009) he told Merritt about this conversation with Brantley.
 

 The trial court summarily denied relief without an evidentiary hearing and did not attach any portions of the record conclusively refuting the factual allegations or otherwise conclusively establishing that Merritt was entitled to no relief.
 
 [2]
 
 The trial court based its summary denial upon a finding that the motion “failed to meet the two prong test set out in
 
 Jones v. State,
 
 709 So.2d [512,] 525, that there be admissible evidence likely to result in acquittal at retrial. The pending motion fails to state any legal or factual basis for the relief sought.”
 

 
 *939
 

 DISCUSSION
 

 In reviewing a trial court’s summary denial of postconviction relief without an evidentiary hearing, we must accept Merritt’s factual allegations as true to the extent they are not refuted by the record.
 
 Occhicone v. State,
 
 768 So.2d 1037, 1041 (Fla.2000);
 
 Peede v. State,
 
 748 So.2d 253, 257 (Fla.1999); Fla. R.App. P. 9.141(b)(2)(D) (on appeal from an order summarily denying a postconviction motion without an evidentiary hearing, the order shall be reversed unless the record shows conclusively that the appellant is entitled to no relief). To qualify as newly-discovered evidence, justifying a new trial, Merritt must meet the two-prong test set forth in
 
 Jones v. State,
 
 591 So.2d 911, 916 (Fla.1991) (“Jones
 
 I"):
 

 1. The proffered evidence must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known of such evidence by the use of diligence; and
 

 2. The proffered evidence must substantially undermine confidence in the outcome of the prior proceedings; stated another way, “the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial.”
 
 Blanco v. State,
 
 702 So.2d 1250, 1252 (Fla.1997) (quoting
 
 Jones I,
 
 591 So.2d at 915).
 
 [3]
 

 The State does not take issue with the newly-discovered nature of the evidence. Rather, the State contends that the affidavits constitute hearsay evidence which do not meet any hearsay exception and would be inadmissible if offered at a new trial.
 

 Although it is true that the affidavits are themselves “hearsay,” the pertinent question in determining whether to grant an evidentiary hearing is not whether the
 
 affidavits
 
 would be admissible if offered at a new trial. The question is whether the affiants’
 
 testimony,
 
 as proffered through the affidavits attached as exhibits to the motion, would be admissible if offered at a new trial. This determination would have to be made at an eviden-tiary hearing.
 
 See, e.g., Robinson v. State,
 
 707 So.2d 688 (Fla.1998);
 
 Lightboume v. State,
 
 644 So.2d 54 (Fla.1994). The statements Brantley made to affiants Nottage and Charles could, under the proper predicate, qualify as statements against penal interest, under section 90.804(2)(c), Florida Statutes, which provides:
 

 (2) The following are not excluded under s. 90.802, provided that the declar-ant is unavailable as a witness:
 
 [4]
 

 [[Image here]]
 

 (c)
 
 Statement against interest.
 
 — A statement which, at the time of its making, was so far contrary to the declar-ant’s pecuniary or proprietary interest or tended to subject the declarant to liability or to render invalid a claim by the declarant against another, so that a person in the declarant’s position would not have made the statement unless he or she believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is inadmissible, unless
 
 *940
 
 corroborating circumstances show the trustworthiness of the statement.
 

 The test for admissibility under 90.804(2)(c) is 1) whether the declarant is unavailable, and if so, 2) whether the statements are relevant, 3) whether the statements tend to inculpate the declarant and exculpate the defendant, and 4) whether the statements are corroborated.
 
 Voorhees v. State,
 
 699 So.2d 602, 613 (Fla.1997);
 
 Masaka v. State,
 
 4 So.3d 1274, 1280 (Fla. 2d DCA 2009).
 

 The trial court erred in denying the motion without an evidentiary hearing. At that hearing, Merritt would have the opportunity to present the live testimony of the affiants (or of Brantley himself). Should the trial court determine that the testimony is admissible, the trial court would then be called upon to assess whether the newly-discovered evidence “is of such a nature that it would probably produce an acquittal on retrial.”
 
 Jones I,
 
 591 So.2d at 915.
 
 [5]
 

 CONCLUSION
 

 Merritt’s motion was supported with affidavits from three individuals. One of these individuals stated under oath that Brantley admitted to committing the murder for which Merritt was convicted. A second individual stated under oath that Brantley admitted that Merritt did not commit the murder for which Merritt was convicted. A third individual stated under oath that Brantley said he would not help Merritt until it was certain that he (Brant-ley) had no chance of getting out of prison himself. While we express no opinion as to the veracity of the testimony proffered by these affidavits, we must accept it as true for purposes of our determination. We conclude that the trial court erred in denying an evidentiary hearing on Merritt’s claim.
 

 Reversed and remanded for the trial court to hold an evidentiary hearing on Merritt’s claim.
 

 [1]
 

 . The affidavit fails to explain how Mercer was aware that Brantley had any involvement or culpability in the murder for which Merritt was convicted.
 

 [2]
 

 . The State acknowledges that the only attachment to the order denying relief was the State's two-page memorandum of law in response to Merritt’s motion. That memorandum argued that the affidavits are hearsay and would be inadmissible if offered at trial.
 

 [3]
 

 . Implicit in this prong is the requirement that the newly-discovered evidence be admissible at a new trial.
 
 See Jones I,
 
 591 So.2d at 916;
 
 Jones v. State,
 
 709 So.2d 512, 521 (Fla.1998)
 
 ("Jones II
 
 ”).
 

 [4]
 

 . Section 90.804(1) defines "unavailability as a witness” to include situations in which the declarant (in this case, Brantley) "persists in refusing to testify concerning the subject matter of the declarant’s statement despite an order of the court to do so”; or in which the declarant "is absent from the hearing, and the proponent of a statement has been unable to procure the declarant’s attendance or testimony by process or other reasonable means.”
 

 [5]
 

 . In making this determination, the trial judge "will necessarily have to evaluate the weight of both the newly discovered evidence and the evidence which was introduced at the trial.”
 
 Jones I,
 
 591 So.2d at 916 (Fla.1991).
 
 See also Jones II,
 
 709 So.2d at 521-522 (Fla.1998) (setting forth factors to consider in evaluating the weight to be accorded the newly-discovered evidence).